## JAMES SHEWAN & SONS, INC. *v.* UNITED STATES.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 42.  Argued October 7, 8, 1924.—Decided November 17, 1924.

The Suits in Admiralty Act of 1920, c. 95, 41 Stat. 525, which was intended to substitute an equivalent remedy against the United States *in personam* for the right *in rem* against its merchant vessels permitted by the Shipping Board Act of 1916, c. 451, 39 Stat. 728, provides, (§ 2) " That in cases where if such vessel were privately owned or operated . . . a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States . . ., provided that such vessel is employed as a merchant vessel. . ."

*Held,* construing the two acts together, that the proviso does not mean that the vessel, being a merchant vessel, must be actively employed as such when the action is commenced; and that where a vessel was at all times previously engaged in the mercantile trade, and so engaged when the cause of action arose, the mere fact that she was laid up and out of use when the action *in personam* began and thereafter, did not prevent its maintenance. P. 110.

Reversed.

APPEAL under Jud. Code, § 238, from a decree of the District Court dismissing a libel *in personam* for want of jurisdiction. See 267 U. S. 86.

*Mr. George V. A. McCloskey,* with whom *Mr. C. C. Calhoun* was on the brief, for appellant.

*Mr. J. Frank Staley,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* and *Mr. Assistant Attorney General Ottinger* were on the brief, for the United States.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

James Shewan & Sons, a corporation of New York, on the 12th day of May, 1922, filed a libel in admiralty against the United States in the District Court for the Southern District of New York, to recover the value of repairs made during the month of May, 1920, on the steamship Biran. The libel averred that the Biran was owned by the United States and at all the times mentioned was engaged in the mercantile trade, that the lien upon the vessel was one which ordinarily could be enforced in admiralty by proceeding *in rem* against the vessel.

The jurisdiction to sue the United States was questioned by exceptive allegations. It was agreed at the hearing that on the 11th day of June, 1921, the steamship Biran, which had theretofore been in the merchant service of the United States, was laid up in the care and custody of caretakers employed by the United States Shipping Board, in the out-of-use and laid-up fleet of that Board anchored in the Hudson River within the District, and so remained at and after the time when the libel was filed herein, and that since June 11, 1921, it had carried neither crew nor cargo, nor been the subject of any operating

agreement for use in the merchant or other service, nor had it been transferred by the Shipping Board to any other department or agency of the Government. The libelant relied for its right to sue the United States upon the Suits in Admiralty Act (c. 95, 41 Stat. 525, March 9, 1920). That act provides in its first section, with an exception not important here, that no vessel owned by the United States' or by any corporation in which the United States owns the capital stock or in the possession of the United States or of such corporation or operated by or for the United States or such corporation, shall hereafter, in view of the provision made elsewhere in the act for a libel *in personam,* be subject to arrest or seizure by judicial process in the United States.

The second section is in part:

"That in cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States or against such corporation, as the case may be, provided that such vessel is employed as a merchant vessel or is a tug boat operated by such corporation."

The section further provides that such suit shall be brought in the district where the party suing resides or has its principal place of business, or in which the vessel or cargo charged with liability is found.

The District Court, following *Mack Engineering & Supply Co.* v. *United States,* 291 Fed. 713, dismissed the case solely for lack of jurisdiction, because the vessel whose repairs are the subject of this suit was laid up and was not, when the action commenced, employed as a merchant vessel, and the judge has so certified in this proceeding in error under § 238 of the Judicial Code.

We think this view is based on too narrow a construction of the section. It leads to the result that one who

repairs a merchant vessel owned by the United States is excluded from the benefit of the act if, immediately after the repairs are made, the United States shall lay her up, although still a merchant vessel in character and without change of her to any other service. If a vessel engaged in the service as a merchant vessel negligently collides with and injures another vessel, and then at once is laid up before suit is brought under this act, the owner of the vessel injured under such construction will have no cause of action against the United States for the injury. This act was enacted chiefly for the purpose of relieving the United States from obstruction to its commercial traffic by the seizure of merchant vessels owned by it or under its control, and was intended to substitute an equivalent remedy against the United States *in personam* for the right *in rem* against the vessel, which the Act of September 7, 1916, § 9, c. 451, 39 Stat. 728, had permitted. *Blamberg Bros.* v. *United States,* 260 U. S. 452, 458, 459. We do not find anything in the Act of 1916 which would prevent its liberal construction to enable one who had repaired a vessel engaged solely as a merchant vessel for the United States from proceeding against that vessel *in rem* under the Act of 1916, even though, after the repairs had been made upon her as a commercial vessel, she was subsequently laid up, if she had not then acquired character as a public vessel. So we do not think that the decision in *The Lake Monroe,* 250 U. S. 246, would have been different had she thus been laid up after she had injured the libelant's vessel in that case. Obviously, under the Act of 1916, liability to suit of a vessel owned or controlled by the United States as a merchant vessel depended primarily, not upon the time when the suit was to be brought and the vessel was to be seized, but upon her character as one solely engaged in merchant service when the transaction occurred out of which the liability grew.

In view of the purpose of Congress, in the Act of 1920, merely to substitute for an action *in rem* an action *in personam,* the natural construction would be one which, *ceteris paribus,* would measure the extent of the right to sue the United States *in personam* by that which had been granted in the Act of 1916 to sue *in rem* its offending or responsible vessel. The date of natural importance in fixing the liability *in rem* would seem to be that of the event out of which the liability grew. The date of the suit would be important only in the application of a statute of limitation or a change in character of the vessel from that of a merchant vessel to public vessel, or possibly some kind of a change in ownership or the happening of some other circumstance after the event which would exempt the offending vessel if privately owned from seizure under the rules of admiralty law. It is in respect of such changes in the situation before suit that the phrase "in cases where if such vessel were privately owned . . . a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for," is used; and it does not qualify or in any way add to the force of the subsequent and final proviso "that such vessel is employed as a merchant vessel or is a tug boat operated by such corporation."

What then does the proviso mean? Are the words to be construed as if they read "is being actively employed as a merchant vessel"? Such a construction is a narrow one and not in accord with the equitable purpose of Congress. The important line between immunity from judicial seizure of government vessels under the Act of 1916 was between public vessels and those engaged in merchant service. The mere laying up of a vessel engaged in the latter service would not change its character, unless the Government did something affirmative to make it a public vessel. It would have been an unjust result

to hold that under that act a mere suspension of the vessel's activity in merchant trade destroyed its quasi personal responsibility for its wrongs done or its liabilities incurred in that trade. In view of the relation of the Act of 1920 to the Act of 1916, unless the words of the proviso of § 2 of the Act of 1920 make any other construction unreasonable, the mere laying up of the vessel before suit brought under the act should not prevent a libel *in personam* against the United States for a claim which under the Act of 1916 might be enforced against the vessel itself. The words of the proviso may reasonably and more liberally be interpreted as a limitation that the vessel is a merchant vessel and shall not have lost its character as such. Thus construed, § 2 gives the District Court jurisdiction in such a case as this.

*Decree reversed.*