## UNITED STATES v. NEPTUNE LINE, Inc., et al.

(Circuit Court of Appeals, Fourth Circuit. April 14, 1926.)

No. 2456.

Collision ⬤➾140—Under Suits In Admiralty Act, libelant can recover only value of vessel in excess of prior liens at time of filing libel, not at time of collision (Act Sept. 7, 1916, § 9, amended by Act July 15, 1918, § 3 [Comp. St. Ann. Supp. 1919, § 8146e]; Act March 9, 1920, §§ 2, 3 [Comp. St. Ann. Supp. 1923, §§ 1251¼a, 1251¼b]).

Suits in Admiralty Act March 9, 1920, §§ 2, 3 (Comp. St. Ann. Supp. 1923, §§ 1251¼a, 1251¼b), merely substitutes remedy in personam against the United States, for remedy in rem against vessel under Act Sept. 7, 1916, § 9, amended by Act July 15, 1918, § 3 (Comp. St. Ann. Supp. 1919, § 8146e), so that limit of recovery against government is value of vessel, not at time of collision, but when libel is filed, and, where it has no value at latter time in excess of prior liens, libelant can recover nothing from United States.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk.

Libel in personam by the Neptune Line, Incorporated, and others, against the United States of America, as owner of the steamship Fort Logan. From a decree for libelants, the United States appeals. Reversed.

H. H. Rumble, Sp. Asst. in Admiralty to U. S. Atty., of Norfolk, Va. (Paul W. Kear, U. S. Atty., of Norfolk, Va., on the brief), for the United States.

John W. Eggleston and John W. Oast, Jr., both of Norfolk, Va. (Foley & Martin and Burlingham, Veeder, Masten & Fearey, all of New York City, Hughes, Vandeventer & Eggleston, of Norfolk, Va., and Van Vechten Veeder, of New York City, on the brief), for appellees.

Before WADDILL and PARKER, Circuit Judges, and McDOWELL, District Judge.

PARKER, Circuit Judge. This is an appeal in admiralty from a decree against the United States, as owner of the steamship Fort Logan, for damages done by that vessel in a collision with the barge Sea King. A libel in personam was filed against the United States under the "Suits in Admiralty" Act of March 9, 1920 (Comp. St. Ann. Supp. 1923, §§ 1251¼–1251¼l) and the sole question involved is the extent of the liability of the United States under that act.

The Fort Logan was a merchant vessel

belonging to the United States. She was chartered by the United States Shipping Board to the States Steamship Corporation on the bare boat basis, and was in the exclusive possession of, and was being operated by, the States Steamship Corporation on May 13, 1920, when she collided with, and did serious damage to, the barge Sea King of the Neptune Line. It is admitted that the Fort Logan was solely at fault in this collision, and that the damages to the Sea King, as a result thereof, amounted to $18,705.31. It is also admitted that, at the time of the collision, the Fort Logan was worth $100,000. The libel herein was not filed, however, until March 7, 1922, almost two years after the collision; and in the meantime the Fort Logan had greatly deteriorated and decreased in value. Shortly after the filing of the libel, she was surrendered to the court and sold by the marshal for $3,150. There is no evidence that she was worth more than this amount at the time the libel was filed. This sum has been distributed in payment of wage claims of seamen, which constituted prior liens on the vessel.

The contention of the libelants is that the effect of the Suits in Admiralty Act is to substitute the liability of the United States for the liability of the ship, and that this liability cannot be limited to less than the value of the ship at the time of the collision. This was the holding of Judge Woods, who heard this phase of the case in the District Court, and, if his holding be correct, libelants are entitled to recover the whole of their claim against the United States, as the vessel was admittedly worth much more than that at the time of the collision. The contention of the government, on the other hand, is that the effect of the Suits in Admiralty Act was, not to substitute the liability of the United States for the liability of the ship, but to substitute a remedy against the United States for a remedy against the ship; that, as the vessel was being operated under a bare boat charter, there was no liability on the part of the United States, as owner, for damage done by her in the collision; that, in the absence of the Suits in Admiralty Act of March 9, 1920, the sole remedy of libelant would have been a libel in rem against the vessel, in which the limit of recovery would have been the value of the vessel at the time of her attachment under the libel; that the only effect of the Suits in Admiralty Act is to permit the recovery, in an in personam proceeding against the United States, of what was formerly recoverable against the vessel; and that, as the vessel was covered with liens for seamen's wage claims and libelant could not have recovered anything in a libel against it, nothing can be recovered in the in personam proceeding against the government. We think that this contention is correct.

It is perfectly clear that, if the Fort Logan had been privately owned, the limit of the recovery would have been her value at the time of seizure under libel proceedings. The ship of a private owner is liable for damage caused by her in a collision, but the owner who has parted with all control to a charterer under a bare boat charter, is not personally liable. The Barnstable, 181 U. S. 464, 21 S. Ct. 684, 45 L. Ed. 954; Reed v. U. S., 11 Wall. 591, 600, 20 L. Ed. 220; 24 R. C. L. pp. 1109, 1110. If the vessel had been privately owned, therefore, the only remedy of libelant would have been a libel in rem against the vessel, and the limit of the recovery would necessarily have been what could have been realized from the vessel after she had been seized in the libel proceeding. As nothing remained after the payment of the wage claims constituting prior liens on the vessel, it is manifest that nothing could have been recovered in libel proceedings against her, if she had been privately owned.

Formerly, for damages done in collision by the ships of the government, the courts of admiralty of the United States had no jurisdiction to entertain suits in personam against the United States or in rem against the offending vessel. The Western Maid, 257 U. S. 419, 42 S. Ct. 159, 66 L. Ed. 299. The Lake Lida (C. C. A. 4th) 290 F. 198. In 1916, however, an act was passed by Congress providing that vessels purchased, chartered, or leased from the United States Shipping Board, "while employed solely as merchant vessels shall be subject to all laws, regulations and liabilities governing merchant vessels, whether the United States be interested therein, in whole or in part, or hold any mortgage, lien, or other interest therein." Act of Sept. 7, 1916, c. 451, § 9, 39 Stat. 730, re-enacted by Act of July 15, 1918, c. 152, § 3, 40 Stat. 901 (Comp. St. Ann. Supp. 1919, § 8146e). It was held that the effect of this act was to make vessels in which the United States had an interest, while employed in the mercantile trade, subject to arrest or seizure for the enforcement of maritime liens. The Lake Monroe, 250 U. S. 246, 39 S. Ct. 460, 63 L. Ed. 962; Blamberg Bros. v. U. S., 260 U. S. 452, 43 S. Ct. 179, 67 L. Ed. 346. Neither this act as originally passed, nor the amendment, imposed any personal liability upon the United States as owner. It merely subjected the vessels, themselves, when em-

ployed as merchant vessels, to the liability of merchant vessels privately owned.

To avoid the embarrassment to which the government found itself subjected by the seizure of its vessels under the Act of Sept. 7, 1916, c. 451 (39 Stat. 727), the Suits in Admiralty Act of March 9, 1920, c. 95 (41 Stat. 525), was passed. Blamberg Bros. v. U. S., supra. This statute forbade the arrest or seizure by judicial process of vessels owned by the United States or by a corporation the stock of which was owned by the United States or its representatives, and provided that a libel in personam might be brought against the United States. Whether the effect of this statute was to impose upon the United States the substantive liability, which under the act of 1916 existed only with respect to the vessel, thereby making the United States liable in cases in which private owners would not be liable, or whether its effect was merely to substitute, as a remedy, a proceeding in personam for a proceeding in rem, without imposing upon the government a substantive liability beyond that of private owners, is the precise question involved in this case.

It is not necessary that we decide whether the effect of the Act of March 9, 1920, was also to create a right to recover from the government in cases where, under the maritime law, there is personal liability on the part of private owners, as distinguished from the liability in rem of their ships, as to which there has been some division of opinion among the courts. Compare Bashinsky Cotton Co. v. U. S. (D. C.) 8 F.(2d) 79, and Markle v. U. S. (D. C.) 8 F. (2d) 87, with Atlantic Fruit Co. v. United States (D. C.) 8 F. (2d) 81. That question does not arise here. The question here is whether the act created a personal responsibility on the part of the government for the acts of its vessels which does not exist in the case of private owners. We are convinced, from a study of the reason, purpose, and history of the act, that it was not the intention of Congress to impose any such liability on the government; and a study of the act itself shows that it does not impose such liability, but in the case of government vessels merely substitutes a remedy in personam for the enforcement of the same liability which in the case of privately owned vessels would be enforced by a proceeding in rem. Section 2, which creates the right to proceed in personam, provides:

"That in cases where if such vessel were privately owned or operated, * * * a proceeding in admiralty could be maintained at the time of the commencement of the ac- tion herein provided for, a libel in personam may be brought against the United States. * * * Such suits shall be brought in the District Court of the United States for the district in which the parties so suing, or any of them, reside or have their principal place of business in the United States, or in which the vessel or cargo charged with liability is found. + * * "

Section 3 provides:

"That such suits shall proceed and shall be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties. * * * If the libelant so elects in his libel the suit may proceed in accordance with the principles of libels in rem wherever it shall appear that had the vessel or cargo been privately owned and possessed a libel in rem might have been maintained. * + * "

There is nothing in either of the sections quoted, or elsewhere in the act, which provides that the government shall be liable in any case where private owners would not be liable. On the contrary, the libel in personam is authorized only in cases where, *if the vessel were privately owned* or operated, a proceeding in admiralty could be maintained. And suits instituted under the act shall not only proceed, but shall also be *"heard and determined"* according to the principles of law and to the rules of practice *"obtaining in like cases between private parties."* If the libelant so elects in his libel (as libelant did in this case), the suit may proceed in accordance with the principles of libels in rem whenever it shall appear that, *had the vessel been privately owned,* a libel in rem might have been maintained.

That this is the correct interpretation of the act, is, we think, sustained by the decisions rendered thereunder. In Blamberg v. U. S., supra, having under consideration the right to file a libel, where the vessel was not in a port of the United States or of one of her possessions, the Supreme Court of the United States, speaking through Chief Justice Taft, said:

"This act was passed to avoid the embarrassment to which the government found itself subjected by the Act of September 7, 1916, c. 451, 39 Stat. 728, by the ninth section of which vessels in which the United States had an interest and which were employed as merchant vessels were made liable as such to arrest or seizure for enforcement of maritime liens. The Lake Monroe, 250 U. S. 246 [39 S. Ct. 460, 63 L. Ed. 962]. It was intended to substitute this proceeding in personam, as the first section of the act express-

ly indicates, in lieu of the previous unlimited right of claimants to libel such vessels in rem in the ports of the United States and its possessions." 260 U. S. at 458, 459, 43 S. Ct. 179, 180 (67 L. Ed. 346).

In James Shewan & Sons v. United States, 266 U. S. 108, 45 S. Ct. 45, 69 L. Ed. 192, involving liability for repairs to a vessel of the United States engaged in Merchant Service, Chief Justice Taft, speaking for the court, said:

"This act was enacted chiefly for the purpose of relieving the United States from obstruction to its commercial traffic by the seizure of merchant vessels owned by it or under its control, and was intended to substitute an equivalent remedy against the United States in personam for the right in rem against the vessel, which the act of 1916 * * * had permitted. * * * In view of the purpose of Congress in the act of 1920 merely to substitute an action in rem for an action in personam, the natural construction would be one which, ceteris paribus, would measure the extent of the right to sue the United States in personam by that which had been granted in the act of 1916 to sue in rem its offending or responsible vessel." 266 U. S. at 111, 112, 45 S. Ct. 46.

In Blamberg Bros. v. United States (D. C.) 272 F. 978, Judge Rose said:

"There is no reason to suppose that Congress intended to make the United States suable under any circumstances in which a suit could not have been instituted in this country, were the ship or cargo privately owned."

In Atlantic Fruit Co. v. United States, 8 F. (2d) 81, Judge Winslow said:

"It would seem that section 2 of the Suits in Admiralty Act, * * * relating to actions in personam against the United States, permits such a relief to be used only as and when the same might be asked against a private respondent as a part of or in conjunction with a suit in rem, of which the court has jurisdiction. In other words, the same principles of law and practice are intended to apply in authorized suits against the United States as against private owners."

Since, therefore, the Suits in Admiralty Act in a case of this character merely substitutes a remedy in personam for one in rem; and since the act creates no liability on the part of the government that would not exist in the case of a private owner, but provides that the suit "shall be heard and determined according to the principles of law and rules of practice obtaining in like cases between private parties"; and since, if the vessel were privately owned, the limit of libelant's recovery would be the value of the vessel at the time of its seizure in libel proceedings, we conclude that the limit of the recovery in the in personam libel against the government must be the value of the vessel at the time of the filing of the libel. Otherwise libelant might, as in this case, obtain a measure of relief against the government, which it could not have obtained against the vessel or its owner, if it had been privately owned. Such a result was not in contemplation of Congress and would be repugnant to the express provisions of the act.

We do not think that anything said in the case of James Shewan & Sons v. U. S., 266 U. S. 108, 45 S. Ct. 45, 69 L. Ed. 192, conflicts in any way with our conclusion. In that case repairs were furnished to the ship while engaged in the mercantile trade, and it was held that the fact that she was withdrawn from that service and placed in the custody of caretakers prior to the filing of the libel could not defeat the jurisdiction of the court under the Act of March 9, 1920. The question as to the extent of the liability was not raised in that case; but what the court said, in disposing of the question before it, supports the position that anything which would defeat recovery, in case the vessel were privately owned, would also defeat recovery in the in personam proceeding against the government. In this connection the court said:

"The date of the suit would be important only in the application of a statute of limitation or a change in character of the vessel from that of a merchant vessel to public vessel, or possibly some kind of a change in ownership or the happening of some other circumstance after the event which would exempt the offending vessel *if privately owned* from seizure under the rules of admiralty law. It is in respect of such changes in the situation before suit that the phrase, 'in cases where if such vessel were privately owned * * * a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided,' is used. * * *" (Italics ours.)

As the Fort Logan had no value, whatever, at the time of the filing of the libel, in excess of the seamen's wage claims, which constituted prior liens upon her, and in payment of which the sum realized from her sale has been disbursed, it follows that libelant was not entitled to recover anything of the United States, as it could not have recovered anything of the vessel or of a private owner un-

der similar circumstances if the vessel had been privately owned. The decree of the District Court is accordingly reversed with costs.

Reversed.