## THE SNUG HARBOR.

District Court, E. D. New York.

Dec. 23, 1930.

See, also, 29 F.(2d) 588; 40 F.(2d) 27.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Charles E. Wythe, Sp. Asst. U. S. Atty., of New York City, and F. R. Conway, of Washington, D. C., of counsel), for the United States.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City, and Baird, White & Lanning, of Norfolk, Va. (Charles R. Hickox and Clement C. Rinehart, both of New York City, of counsel), for respondents.

GALSTON, District Judge.

The petitioner seeks to limit its liability for damages sustained by the barges Winstead and Vermillion, which, while on a voyage from Norfolk to Boston, laden with coal, and while passing between Montauk Point and Block Island, struck an obstruction and sank approximately four and a half miles east by north from Montauk Light.

Suits were begun in the United States District Court for the Eastern District of Virginia by the Eastern Transportation Company, as owner and operator of the barge John H. Winstead and the bailee of the cargo thereon, and as operator of the barge Vermillion by W. Bernard Duke et al., against the petitioner herein, to recover for the loss of the barges and their cargoes. These proceedings were under the Suits in Admiralty Act, 41 Stat. 525, title 46, §§ 741–752, U. S. Code (46 USCA §§ 741–752). A final decree was entered in the said court against the petitioner herein in the total amount of $212,151.84. The decree of the District Court [29 F.(2d) 588] was affirmed by the Circuit Court of Appeals for the Fourth Circuit [40 F.(2d) 27].

The petition alleges that on August 15, 1920, the steamship Snug Harbor, while on a voyage from Baltimore to Boston with a full cargo of coal, was in collision with the barge Pottsfield in tow of the tug Covington, as a result of which the steamship Snug Harbor was so severely damaged that she was abandoned.

On August 17, 1920, the master of the Snug Harbor reported to the operating agents of the vessel in Boston advising of the loss of the vessel. This report was then forwarded to the United States Shipping Board, as owner of the vessel, and was received by it on August 24, 1920. His report stated that the collision had occurred one mile west, three-quarters south from Montauk Point Gas Buoy, and that the Snug Harbor had sunk as a result of the collision. As thus reported, the sinking was not in any navigable channel, but on the high seas. Thereafter search was made for the wreck of the Snug Harbor, but it was not located until July, 1928. The point at which the respondents' barges sank was within a navigable channel and approximately five miles from the place where the Snug Harbor had been reported sunk. Then in July, 1928, it was discovered that the Snug Harbor was resting on the bottom at the point where the barges Winstead and Vermillion had encountered the obstruction.

It is alleged that the loss of those barges was occasioned without the privity or knowledge of the petitioner. It is also alleged that the Snug Harbor is now within this district resting on bottom approximately four and a half miles east by north from Montauk Light.

At the time of the sinking of respondents' barges, the Snug Harbor was a worth-

less wreck. Moreover, no freight moneys were earned or had been received. The petitioner, however, did receive in January, 1922, the sum of $37,825.90 in settlement of the liability of the tug Covington for the collision with the Snug Harbor.

In opposing the petition for limitation, the respondents appear specially for the purpose of filing exceptions and suggesting lack of jurisdiction of the court.

It is urged that the petition is not properly filed in this district; and reliance is had on Admiralty Rules, Rule 54 (28 USCA § 723). That rule reads:

1. "Said ship or vessel may be libeled."

2. "Or, if the said ship or vessel be not libeled, then in the District Court for any district in which the said owner or owners may be sued in that behalf."

3. "When the said ship or vessel has not been libeled to answer the matters aforesaid and suit has not been commenced against the said owner or owners, or has been commenced in a district other than that in which the said ship or vessel may be, the said proceedings may be had in the District Court of the district in which the said ship or vessel may be, and where it may be subject to the control of such court for the purposes of the case as hereinbefore provided."

It is argued by the respondents that no right is conferred by articles 1 and 3 unless there is in the district a ship or vessel which may be libeled, and which is subject to the control of the court. Respondents say that the Snug Harbor has never been libeled in this district, and that she is, as alleged in the petition, a worthless wreck. They contend that, while the wreck of what was the Snug Harbor may lie within the district, Rule 51 contemplates the present existence, within the control of the court, of a vessel that can be physically surrendered, appraised, or transferred. Thus it is argued that the right which an owner has of going into either of two districts, as provided in the first and third articles of Rule 54, is predicated on the existence in the district, not of a wreck, but of a vessel which can be the subject of a proceeding in rem. Rule 51 (28 USCA § 723) reads:

" * * * The said owner or owners shall and may file a libel or petition in the proper District Court of the United States, * * * and thereupon said court, having caused due appraisement to be had of the amount or value of the interest of said owner or owners, respectively, in such ship or vessel, and her freight, for the voyage, shall make an order for the payment of the same into court, or for the giving of a stipulation with sufficient sureties or an approved corporate surety for the payment thereof into court with interest at the rate of six per cent. per annum from the date of said stipulation and costs, whenever the same shall be ordered; or, if the said owner or owners shall so elect, the said court shall, without such appraisement make an order for the transfer by him or them of his or their interest in such vessel and freight to a trustee to be appointed by the court."

The procedure adopted by the petitioner herein is not an unusual one. On application of the petitioner, the court herein made an order of reference to a commissioner for an appraisal of the petitioner's interest in the Snug Harbor. The finding of the commissioner, when confirmed by the court, will establish the value of the petitioner's interest, and the court may then direct a surrender of such interest as a condition precedent to limitation. Benedict on Admiralty (5th Ed.) §§ 485, 486, pp. 575–581.

■ Nor is there any requirement in the limitation statutes (46 USCA §§ 181–195) that there be within the district, as urged by the respondents, "a vessel subject to the control of the court which can be surrendered, appraised or transferred." Indeed it may be stated parenthetically that frequently the vessel with respect to which limitation is sought has gone down at sea or otherwise has ceased to exist.

■ The second point urged by the respondents is that there can be no limitation of damages caused by a wreck. It is argued that the limitation statutes apply only to damages caused by vessels, and that the identity of the Snug Harbor as a vessel was lost when she sank.

This is the critical question involved in this proceeding. Is the Snug Harbor to be considered a vessel within the meaning of the limitation statutes? In determining this question, aid can be had from the opinion of the Supreme Court in Eastern Transportation Co. v. United States et al., 272 U. S. 675, 47 S. Ct. 289, 293, 71 L. Ed. 472. That was an appeal from the United States District Court (283 F. 1015) for the Eastern District of Virginia, which dismissed for lack of jurisdiction an admiralty suit in personam brought against the United States for the

loss of vessels in collision with the sunken and unmarked wreck of the Snug Harbor. Chief Justice Taft wrote:

"What the statute [i. e. Suits in Admiralty Act] means by saying 'employed as a merchant vessel' is that the vessel shall belong to that class as distinguished from one employed in the governmental service, not necessarily that it shall be actively thus employed at the time of the collision. Shewan & Sons v. United States [266 U. S. 108, 45 S. Ct. 45, 69 L. Ed. 192], supra. The cause of action grows out of the responsibility of the government for a merchant vessel which in the course of its employment had become a danger to navigation and which imposed a duty to avoid that danger. A wreck which is a total loss will not furnish basis for an action in rem, as we have assumed, but if a proceeding in admiralty permitted by the act embraces the principles both of suits in personam and suits in rem, it is a most natural construction of the act dealing with merchant vessels employed by the United States, to include as a suit in personam it permits, one for a tort caused by the negligence of the United States in dealing with a wreck of its merchant vessel and its failure to comply with its own navigation laws therewith."

Now section 6 of the Suits in Admiralty Act (46 USCA § 746) directs that the United States "shall be entitled to the benefits of all exemptions and of all limitations of liability accorded by law to the owners, charterers, operators, or agents of vessels."

From the foregoing, surely then within the meaning of the Suits in Admiralty Act (46 USCA §§ 741-752) the Supreme Court held the Snug Harbor at the time of the collision to be a merchant vessel.

Such being the law of Eastern Transportation Co. v. United States, as decided by the Supreme Court, the remaining inquiry is whether that which is and must be considered a vessel within the meaning of the Suits in Admiralty Act must not also be considered a vessel within the limitation statutes. What is there in the situation that would enable one to say that the Snug Harbor was a vessel, such as to enable the respondents herein to get jurisdiction in a suit against the United States, and at the same time cease to have such identity, such as to bar the United States from the benefits of the limitation statutes? The contention seems to be that the Snug Harbor could at the same time both be a vessel and not be a vessel—a contention not tenable either in logic or in law. The dilemma confronting the respondents clearly is this: When they sought jurisdiction in admiralty, they had to prove, as they did, that the Snug Harbor at the time of the collision was a vessel; to deny the benefits of the limitation statutes they must assert, as they do, that the Snug Harbor at the time of the collision was not a vessel. For the respondents there can be but one escape, and that is to show that the term "vessel" is used with different connotation in the two statutes. In the last analysis, though, section 6 of the Suits in Admiralty Act is inescapable.

Many cases have been cited by the respondents in this proceeding to show that the Snug Harbor was not a vessel, but no case cited shows that any court held that at any given time that which was a vessel within the meaning of one statute was not a vessel within the meaning of some other statute. Indeed there is authority for believing that a sunken vessel for purposes of limitation continues to be a vessel. In Eastern Steamship Corporation v. Great Lakes Dredge & Dock Co. (C. C. A.) 256 F. 497, 501, it was said:

"We also think that the drill boat, by being temporarily sunk, did not cease to be a vessel, and that the dredge company is not to be deprived of the benefit of the provisions of section 4283, provided the fault that caused the collision was without its privity or knowledge, or that of its general manager, Williams."

Finally, it is urged as an exception to the petition that an issue once heard and determined cannot, as between the parties, be again considered. The respondents contend that the Virginia District Court has passed on the question which would be involved in the limitation proceeding.

But I find nowhere in the opinion of the District Court in Eastern Transportation Co. v. United States (The Snug Harbor), 29 F. (2d) 588, any holding that the loss occurred with the privity or knowledge of the United States Shipping Board. At most in this regard the finding was that the Lighthouse Service undertook the duty of searching for and finding and marking the wreck, and that the Shipping Board which had control of the vessel, apparently failed to do anything to find and mark the wreck, and that therefore the action of the Lighthouse Service did not relieve the United States of its obligation to mark such wreck. But to say that is not to assert that the loss occurred with the privity or knowledge of the petitioner. Nor does the opinion of the Circuit Court of Appeals for

the Fourth Circuit, as reported in 40 F.(2d) 27, go further in that respect.

Accordingly, the exceptions to the petition are overruled. Settle order on notice.