**OLAVARRIA & CO., Inc., v. UNITED STATES et al.**

**No. 2376.**

District Court, S. D. Alabama, S. D.

Aug. 21, 1944.

Dart & Dart, of New Orleans, La., and McCorvey, McLeod, Turner & Rogers, of Mobile, Ala., for libelant.

Albert J. Tully, U. S. Atty., and Palmer Pillans (of Pillans & Cowley), both of Mobile, Ala., for respondents.

McDUFFIE, District Judge.

The question presented in this cause involves the interpretation or construction of the Suits in Admiralty Act of 1920, 46 U.S.C.A. § 741 et seq., and more specially, Sections 741, 742 and 743. A study of the entire Act is helpful in clarifying the intention of the lawmakers.

Those facts in this cause which are not in dispute, briefly stated, are as follows: The United States of America, through its agency, the War Shipping Administration, was operating the S. S. William C. Atwater as a Merchant vessel engaged in carrying merchandise for hire at the time of the occurrences which are the basis for this cause of action, between, among other ports, the port of Ponce, P. R., and United States ports. On October 13, 1943, 85,600 bags of sugar was delivered to the vessel at Ponce, P. R., to be carried to Mobile, Alabama, in accordance with the valid terms of a Bill of Lading which contained the following clause:

"If the goods herein covered are carried on a vessel owned by or under bareboat charter to the United States and which is a Public Vessel of the United States, War Shipping Administration, on behalf of the United States, hereby assumes all liabilities it would have with respect to the carriage of such goods if the vessel were a merchant vessel except with respect to cargo owned by the United States or any Agency or Department thereof and lend-lease cargo. This clause is to be construed only as an agreement that such cargo when carried on such a Public Vessel shall be treated as though the carrying vessel were a merchant vessel with respect to liabilities for loss or damage to such cargo."

The S. S. William C. Atwater discharged her cargo on or about October 21, 1943, at Mobile, Alabama, and on, to-wit, October 27, 1943, the United States of America, acting through the War Shipping Administration, requisitioned title to the S. S. William C. Atwater, took possession of her and delivered her to the Secretary of War for use in the military service of the nation. The Steamship was thereupon removed across the Mobile River to the Alabama Dry Dock and Shipbuilding Company to be transformed or converted from a cargo carrier to a transport. The ownership, type and character of the vessel was therefore changed immediately upon receipt of her by the War Department.

It is assumed that prior to taking the title, the Steamship was owned by the Fall River Navigation Company, chartered to the U. S. Government, and operated under the direction and supervision of its agency, the War Shipping Administration, in the Merchant Service. After being requisitioned, she became a "public vessel" to be used for governmental purposes as distinguished from a publicly controlled and operated vessel in the Merchant Service.

It is conceded by the Respondent that prior to the requisition of the vessel by the U. S. Government and her change from a merchant to a public vessel, the libelant could state a cause of action cognizable under the Suits in Admiralty Act of 1920, but such cause of action was lost to libelant when the vessel was taken by the Government to be converted into a transport. That is to say, though Congress gave a right of action to libelant, it has also destroyed that right (which incidentally is a property right).

The language of Section 742, Title 46, U.S.C.A., relied upon by the Respondent in its contention, as aforesaid, are the words "a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for," and the proviso "is employed as a merchant vessel or is a tugboat." In other words, the contention of the Government is that the Legislative Branch has so written the law that the sovereign can escape his liability by changing overnight, as it were, the character of the vessel. As stated another way, that the right to libel is limited to the character or type of the vessel at the time of the filing of the libel, rather than its character at the time of the occurrence out of which the cause of action accrued.

This Court is unable to bring itself in agreement with the Respondent's contentions. While not unmindful that those acts of the national Legislature waiving the sovereign's immunity should be strictly construed, this does not mean that a Court must give to such a statute a meaning which its language shows was not intended, even though the language be

somewhat confused and awkwardly expressed.

Section 741, referred to above, forbids the seizure of vessels and cargoes owned by the United States, or in the possession of or operated by or for the United States, and neither vessels nor cargoes so owned or possessed shall, in "view of the provision herein made for a libel in personam," be subject to arrest or seizure by judicial process in the United States or its possessions.

Section 742 provides for the libel in personam as a substitute for the loss of the right to libel referred to in Section 741 in the following language:

"In cases where if such vessel were privately owned or operated or if such cargo were privately owned or possessed, a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States * * * provided that such vessel *is* employed as a merchant vessel or *is* a tugboat. * * * In case the United States or such corporation shall file a libel in rem or in personam in any district, a cross libel in personam may be filed or a set-off claimed against the United States * * * with the same force and effect as if the libel had been filed by a private party."

Section 743, Title 46 U.S.C.A., not only provides the procedure for such libels, but contains also the following language:

"If the libelant so elects in his libel, the suit may proceed in accordance with the principles of libels in rem whenever it shall appear that had the vessel or cargo been privately owned and possessed a libel in rem might have been maintained. Election so to proceed shall not preclude the libelant in any such proper case from seeking relief in personam in the same suit."

■ It is clear the purpose of the Act was to forbid the seizure of the vessel or cargo owned, operated or possessed by the Government when such vessel or cargo is being owned and operated in the Merchant service, and to give the claimant against either the vessel or the cargo a right to sue the Government in personam to recover upon such claim. In other words, to substitute the Government for the vessel or the cargo. The word "damage" is not used in the Act and let us note the following language: "and no cargo owned or possessed shall in view of the provision herein made for a libel in personam," etc.

It is generally conceded that the Suits in Admiralty Act of March 1920 substitutes a remedy in personam against the United States for one in rem. To repeat the question here, therefore, it is: Did Congress in providing a substitute remedy intend to absolve the United States from liability, if the character of the vessel changed after the injury accrued and before suit is filed?

In the above quoted language from Section 742, the language "could be maintained at the time of the commencement of the action herein provided for" and the words "provided that such vessel is employed as a merchant vessel or is a tugboat," literally construed, without careful study, might be confusing. In some cases, stress has been laid upon the words "is employed as a merchant vessel or is a tugboat." Here the word "is" was manifestly used as "was". The Supreme Court in the Shewan case, Shewan & Sons v. United States, 266 U.S. 108, 45 S.Ct. 45, 69 L.Ed. 192, clearly settles that question. The Supreme Court, however, has not construed the proviso so as to tell us just what it means. They tell us it does not mean such a vessel must be continued to be used as a merchant vessel; thus we are left to construe the statute for ourselves. Applying the statute with reference to a tugboat, if it were a tugboat at the time of the injury, it remains a tugboat in so far as the purposes of the Act are concerned. Applying it to ships, clearly it refers to the employment of the ship at the time the claim accrued instead of the continued use of the ship by the Government in a capacity other than for the Merchant Service.

■ The Government contends that the vessel must have had the status of a mercantile vessel, both at the time the cause of action arose and at the time the libel was filed. This Court does not believe such a view can be upheld. On this question, in Benedict on Admiralty, 6 Bd. Vol. 1, pp. 456–457, we find the following language:

" * * * To sustain a suit under the Act the vessel must have been employed as a merchant vessel or must have been a tugboat operated by the corporation, when the facts constituting the cause of action took place. Several District Courts held that the vessel must be and must be alleged to be employed as a merchant vessel at the time of the filing of the libel, language

of equivalent meaning being deemed a sufficient allegation. But the mercantile employment of the vessel at the time of filing the libel is not essential to sustain the action.

"It was disputed whether United States Government ownership at the time only when the cause of action arose or at the time of the filing of the libel as well must be alleged, but it is well settled that the latter is not necessary.

"If the vessel is not a merchant vessel, the suit is brought under the 1925 Act, which permits suits against all other types of federal government vessels."

The same authority holds that a cause of action in personam against the United States may be maintained not only in those cases where the libelant would have a cause of action in rem, but also in cases of purely personal liability. Quoting again from Benedict, Vol. 1, Sec. 195, it is stated:

"S 195. Actions Based on Personal Liability.

"The Acts authorize suit where, if the government vessel were privately owned or operated or the cargo privately owned or possessed, 'a proceeding in admiralty could be maintained at the time of the commencement of the action' provided for in the Acts. The Acts do not say 'where a libel in rem could be maintained' but read 'a proceeding in admiralty', a generic term embracing in its natural connotation actions in rem and actions in personam both of which were separately specified in the original draft for which the final form has substituted a single but inclusive phrase. Equally clear is the implication of the provision that election to proceed upon the principles of libels in rem shall not preclude the libelant in any proper case from seeking relief in personam in the same suit. In safeguarding the right to relief in personam when conjoined with a claim on the principles of actions in rem, this clause necessarily contemplates that the right which such election is not to prejudice exists independently of that election. The provision that the United States shall be entitled to the benefits of all exemptions and of all limitations of liability accorded by law to owners, etc., contemplates actions asserting a personal liability. The provision that suits shall proceed and shall be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties and the further provision for an election to proceed in accordance with the principles of libels in rem, sufficiently show both from the contradistinction of phrase and from the inherent sense of an election that the Act is not confined to the application of the principles of libels in rem to the form of a proceeding in personam. It was urged that the Acts should be construed as merely affording a remedy in personam where suit might have been maintained in rem under Sec. 9 of the Act of September 7, 1916. But whereas the 1916 Act clearly showed an intention not to create a liability of the United States in personam, the 1920 Act not only substitutes a right of action in personam for one in rem but is replete with suggestions of rights in personam independent of any right in rem in cases of private ownership or under the Act of September 7, 1916. The Supreme Court in Johnson v. U. S. squarely held that suit may be maintained upon a claim of direct personal liability as distinguished from a suit proceeding upon the principles of libels in rem. In the lower courts the 1920 Act has been held to embrace suits in personam where a right in personam exists independently of the Act or by virtue of its waiver of sovereign immunity even in tort cases where a private vessel owner would be liable. Where the libel relies on such a personal cause of action and does not elect to proceed in accordance with the principles of libels in rem, it has been held to be unnecessary to allege that the vessel is within the district in which the suit is brought or even within the United States."

Cases supporting this view are Johnson v. United States Shipping Board Emergency Fleet Corporation, 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451, and Eastern Transportation Co. v. United States et al., 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472. The argument appears to be well founded that the character of the vessel at the time a cause of action arises governs the situation, even though at the time of the filing of the suit there may no longer be a res and the suit can be maintained on personal liability. It seems clear to this Court that if a personal liability exists, there is no need for a res in order to sustain the cause of action. This was held by the Supreme Court in the Eastern Transportation case, supra, where the vessel was a total wreck.

It is difficult to see the difference between a vessel passing out of existence

entirely, and a vessel losing its status as a mercantile vessel by being transformed into a public vessel. If the cause of action exists independently of the existence of the vessel, it makes no difference what has become of the vessel, unless it be in foreign ports and without the jurisdiction of the Court. In the Shewan case, supra, the Court said [266 U.S. 108, 45 S.Ct. 46, 69 L.Ed. 192]:

"We do not find anything in the act of 1916 which would prevent its liberal construction to enable one who had repaired a vessel engaged solely as a merchant vessel for the United States from proceeding against that vessel in rem under the act of 1916, even though after the repairs had been made upon her as a commercial vessel, she was subsequently laid up, if she had not then acquired character as a public vessel. So we do not think that the decision in the Lake Monroe case (In re United States) 250 U.S. 246, 39 S.Ct. 460, 63 L.Ed. 962, would have been different had she thus been laid up after she had injured the libelant's vessel in that case."

However, the Court immediately used the following language:

"Obviously under the act of 1916, liability to suit of a vessel owned or controlled by the United States as a merchant vessel depended primarily not upon the time when the suit was to be brought and the vessel was to be seized, but upon her character as one solely engaged in merchant service when the transaction occurred out of which the liability grew."

The Supreme Court, in Johnson v. United States Shipping Board Emergency Fleet Corporation, above referred to, reaffirms the holding in the Eastern Transportation case, using the following language on page 326 of 280 U.S., 50 S.Ct. on page 120, 74 L.Ed. 451:

"It authorizes libel in personam where there is nothing on which recovery in rem could be had. Eastern Transportation Co. v. United States, 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472. And it furnishes exclusive remedy in admiralty against the United States * * * on maritime causes of action arising out of the possession and operation of merchant vessels."

See also United States Shipping Board Emergency Fleet Corporation v. Rosenberg Bros. & Co., 276 U.S. 202–209, and page 213, 48 S.Ct. 256, 72 L.Ed. 531.

■ The limitation as to filing suit against the Government in Admiralty is directed not at the continuation of the character of the vessel after the cause of action arises but the test is whether a libel could be maintained' at the time of the filing of the suit if the vessel were privately owned. Of course, if no such action could be maintained against a privately owned vessel at the time of the filing of the suit, certainly Congress did not intend to permit such action against the Government at that time, which under the Suits in Admiralty Act has assumed responsibility for its publicly owned or operated vessels engaged in the Merchant Service. This construction is emphasized by the use of the words "could be maintained." To maintain is "to uphold by reason or agreement; to vindicate, to make good." It follows the most reasonable construction is that if the suit could be maintained against a private vessel when the suit was filed, a personal liability can be claimed against the Government. This thought is followed out in the following language:

"If the libelant so elects in his libel, the suit may proceed in accordance with the processes of libel in rem whenever it shall appear that had the vessel or cargo been privately owned and possessed, a libel in rem might have been maintained."

This language is directly in conflict with the construction that the libel could not be maintained if the vessel were not continued in use as a Merchant vessel at the time of filing, and without doubt, the language refers to the time of the accrual of the right of action.

Any other construction or meaning ascribed would either destroy the very purposes of the Act, or place the lawmakers in the attitude of providing a remedy against the sovereign with one hand and taking it away with the other. It is not reasonable to conclude that Congress intended the sovereign to become a "sleight of hand artist" or an expert "side showman."

Under the Government's contention in this cause, before an injured citizen could even reach a Court to file his libel, the sovereign could issue a directive or order taking title to the vessel for public purposes, as distinguished from the Merchant Service, leaving the subject to take his chances for relief in a legislative forum instead of the forum of the Courts of

his country, and this, without reference to the destruction of his lien on the vessel or its cargo for an injury sustained.

■ What about the cargo and how did such a limitation as contended for by the government apply to it? What about a libel for towage and salvage services, including contract salvage? The answer to the latter question is found in Section 750, Title 46, U.S.C.A. Under the wording of the statute, no limitation as to the time of filing the libel against the cargo is found, even as construed by some of the Courts. It is odd, to say the least, that Congress did not put some limitation as to the cargo if it intended what some Courts have construed the Act to mean.

■ This Court cannot escape the conclusion that under the Suits in Admiralty Act the sovereign was placed on the same plane with the private operator whenever it entered the business of operating ships in the Merchant Service. If its agents or operators, through negligence or otherwise, injure its citizens in carrying on such a business, the sovereign assumes the same responsibilities that rest upon its subjects who are engaged in carrying merchandise on the high seas for hire.

■ In a very recent decision of the Circuit Court of Appeals of the 2nd Circuit, United States v. Caffey, 141 F.2d 69, it was held that the Suits in Admiralty Act, 46 U.S.C.A. §§ 741–752, and the Public Vessels Act of 1925, 46 U.S.C.A. §§ 781–790, are statutes in pari materia. That the two statutes together contain a complete system under which a claimant having a cause of action in admiralty against the United States, either by reason of things arising in connection with Merchant vessels or arising in connection with public vessels, was afforded a complete remedy. The syllabus, which practically quotes the language of the Court at page 70, of 141 F.2d, and cites the State of Maine v. United States, D.C., 45 F.Supp. 35, which was affirmed in 1 Cir., 134 F.2d 574, certiorari denied 319 U.S. 772, 63 S.Ct. 1437, 87 L.Ed. 1720, is as follows:

"The Suits in Admiralty Act of 1920 and the Public Vessels Act are to be construed together as part of a plan to give the private owners and operators of vessels same right of recovery from government for damages caused by public vessels which they have against each other. Suits in Admiralty Act of 1920, §§ 1–12, 46 U.S.C.A. Sections 741–752; Public Vessels Act, §§ 1–10, 46 U.S.C.A. §§ 781–790".

■ In this cause the Court is of the opinion that a complete remedy is provided for the libelant under the Suits in Admiralty Act, without regard to the Public Vessels Act, and without regard to the terms of the Bill of Lading, which has heretofore been quoted. The contention that no recovery under the Suits in Admiralty Act can be had except in tort is not well founded. The Act on its face does not so limit its purposes, but is general. While previous Acts referred to by the Government may have so limited the right of recovery, the purposes of the Suits in Admiralty Act goes much further. Its first provision is to the effect that no vessel owned or operated by the Government shall be seized, not that they shall not be seized for a tort. Many vessels were being operated by the Government, as the S. S. William C. Atwater was, in carrying cargo for private parties for hire. Some were seized for breaches of contract or duty arising out of such contracts, and it was to protect such vessels from seizure that the Suits in Admiralty Act, 46 U.S.C.A. §§ 741–752, was passed. This was followed by the Public Vessels Act, 46 U.S. C.A. §§ 781–790, the two affording a complete remedy against the Government for injuries by its merchant vessels and its public vessels.

Following the conclusions above set out that the Government can not avoid its responsibility, which it assumes when it enters the Merchant Service, by simply changing the character and type of the vessel, the Court has overruled the motion of the Government to dismiss this libel, and an order to that effect has been entered of record.