214

EASTERN S. S. LINES, Inc. v.
UNITED STATES.

No. 1509.

United States District Court
D. Massachusetts.

June 19, 1950.

Arthur J. Santry, Putnam, Bell, Dutch & Santry, Boston, Mass., for libellant.

George F. Garrity, United States Attorney, Edward O. Gourdin, Asst. United States Attorney, both of Boston, Mass., J. Frank Staley, Attorney, Department of Justice, Washington, D. C., for libellee.

SWEENEY, Chief Judge.

The libellant seeks to recover in this Court costs of reconverting the SS Acadia from a governmental hospital ship to her former condition as a passenger carrier, the Acadia having been used by the United States during the war as a hospital transport. The libellee attacks the jurisdiction of this Court on the ground that the Court of Claims has exclusive jurisdiction over such an action unless the vessel in question was employed "as a merchant vessel". The facts are little in dispute, and this decision must turn upon our answer to the question, "Was the SS Acadia between February 15, 1947, and July 23, 1947, employed as a merchant vessel?"

Findings of Fact

It would be well to go back much beyond that period in order that we may understand the relationship between the parties hereto. A stipulation has been filed which discloses that the SS Acadia was built for the libellant in 1932 and was operated thereafter as a merchant vessel. From October 8, 1941, to November 23, 1941, and from December 18, 1941, to April 29, 1942, she was time chartered to the United States Maritime Commission and operated by other shipping lines as agents for the Commission. On April 29, 1942, she was transferred from a time charter to a bareboat charter basis. Subsequently, on April 30, 1943, the parties entered upon a requisition bareboat charter, and it is on the basis of this charter that the libellant's claim is asserted in this Court.

As of April 30, 1943, the vessel, then being a troop transport and hospital ship, was assigned to the Army Transport Service of the War Department, and continued as such until February 15, 1947. After January, 1946, the vessel was decommissioned as a hospital ship, and in March of 1946 was commissioned to carry dependents of service personnel from the United States and troops returning to the United States, until February 15, 1947. There can be no doubt that all during this period she was in the public service of the United States and was not employed as a merchant vessel. On February 15, 1947, the vessel was redelivered by the War Department to the United States Maritime Commission, and she was simultaneously delivered by the Maritime

Commission to the libellant under a delivery certificate. The vessel was then tied up at a berth at Newport News, where she remained until the following July. Between February 17 and March 14 the vessel was being surveyed for the purpose of ascertaining the amount of work which was required to restore her to the condition she was in when delivered to the United States. Under the charter party the United States had the election of proceeding to do such work as was necessary, or to return the vessel to the libellant and respond in damages for such work as the libellant had to put into her. Early in March an American Bureau of Shipping survey of her bottom was held. Following the completion of this survey on March 14, 1947, negotiations were had between the libellant and the United States Maritime Commission looking toward the redelivery of the vessel to the libellant. It is to be noted that there was no expression, either in deed or word, of an intent to place this vessel in the merchant service. The intention of the Commission was to return the vessel to the libellant, and negotiations were going on towards that end. After February 15 the libellant kept a stand-by custodial skeleton crew on board the vessel. This was under the terms of the service agreement between the parties.

This Court is of the opinion that the exceptions and exceptive allegations of the respondent are well taken, and that this Court does not have jurisdiction of this action. Section 2 of the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., provides for a proceeding in admiralty in this Court " * * * provided that such vessel is employed as a merchant vessel * * *." The many cases cited by the libellant in support of its contention of jurisdiction are readily distinguishable from the facts in this case. It relies heavily upon Eastern Transp. Co. v. United States, 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472, and Shewan & Sons v. United States, 266 U.S. 108, 45 S.Ct. 45, 69 L.Ed. 192, both of which are authority for the simple point that a vessel employed as a merchant vessel does not lose its status as such, either by reason of merely being laid up, or by reason of its sinking and thus becoming a menace to navigation. These cases might be authority for the proposition that the Acadia did not lose her character as a public vessel by reason of being laid up for survey. In the several other cases cited there were affirmative acts committing the vessels to merchant service after service as public vessels, which distinguished them from the case at hand.

### Conclusions of Law

From the foregoing I conclude and rule that the SS Acadia was not employed as a merchant vessel within the meaning of the proviso in Section 2 of the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq.

I conclude and rule that, inasmuch as she was not employed as a merchant vessel, this Court has no jurisdiction.

The motion to dismiss the exceptions and the exceptive allegations is denied. The exceptions are sustained.