**EASTERN S. S. LINES, Inc. v. UNITED STATES.**

No. 4535.

United States Court of Appeals
First Circuit.
March 23, 1951.

Arthur J. Santry, Boston, Mass. (Richard Bancroft, Boston, Mass., with him on the brief), for appellant.

J. Frank Staley, Atty., Department of Justice, Washington, D. C. (George F. Garrity, U. S. Atty., and Edward O. Gourdin, Asst. U. S. Atty., both of Boston, Mass., and Patrick F. Cooney, Atty., Department of Justice, Washington, D. C., with him on the brief), for appellee.

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and CLIFFORD, District Judge.

MAGRUDER, Chief Judge.

Eastern Steamship Lines, Inc., appeals from a final order of the U. S. District Court for the District of Massachusetts

dismissing a libel in admiralty for lack of jurisdiction. 91 F.Supp. 214.

Libelant sought to recover damages in the sum of $5,000,000 as the estimated expenditures which would be necessary to recondition its vessel, the S.S. Acadia, for service as a cargo and passenger ship after her use by the Army for troop transport and hospital service under a requisition bareboat charter. Jurisdiction in the court below was asserted under the Suits in Admiralty Act, 41 Stat. 525, 46 U.S.C.A. § 741 et seq. The United States filed exceptions and exceptive allegations, setting forth that the district court had no jurisdiction under the Suits in Admiralty Act because the Acadia was not employed as a merchant vessel at any of the times material to the claim alleged in the libel. Libelant moved to dismiss respondent's exceptions and exceptive allegations. The matter came on for hearing upon the libel, respondent's exceptions thereto, libelant's motion to dismiss the exceptions, and an agreed stipulation of facts. Having concluded that the Acadia was not employed as a merchant vessel within the meaning of § 2 of the Suits in Admiralty Act, the district court sustained respondent's exceptions to the libel, and on June 20, 1950, entered its order dismissing the libel.

From the stipulation of facts, it appears that the S.S. Acadia was built in 1932 as a combination passenger and cargo steel merchant vessel for Eastern Steamship Lines, Inc., a Maine corporation having its office and principal place of business in Boston, Massachusetts. Eastern Steamship Lines operated the Acadia as a merchant vessel until October 8, 1941, when she was time chartered to the United States Maritime Commission and operated by other shipping lines as agents for the Commission. On April 29, 1942, the vessel was shifted to a bareboat charter basis, under a bareboat charter party between the United States, acting by the Administrator, War Shipping Administration, as charterer, and Eastern Steamship Lines, Inc., as owner. This bareboat charter specifically recited: "It is the intention of the Charterer to subcharter or otherwise make Vessel available to the Navy Department or War Department *for military use as a public vessel*" [italics added].

The vessel was then assigned to the Army Transport Service of the War Department. Its first voyage under the bareboat charter was the transportation of diplomats from South American countries. Upon completion of that voyage, the vessel was sent by the government to a shipyard in Boston to be converted for troop transport and hospital service. After being fitted out for this purpose, on October 16, 1942, the Acadia was embarked upon troop transport and hospital service, still under the control of the Army Transport Service. She was so employed when she was requisitioned on a bareboat charter basis. The parties executed a standard requisition bareboat charter effective as of April 30, 1943, and it is upon the terms of this requisition bareboat charter that Eastern Steamship Lines founded the claim set forth in the present libel.

The Acadia continued to be operated by the Army Transport Service as a troop transport and hospital ship until February 7, 1946, when she was decommissioned as a hospital ship and converted for the carriage of dependents of service personnel from the United States and the carriage of troops returning to the United States, in which service she remained until February 15, 1947.

On the latter date, the vessel being at a shipyard in Newport News, and the government having determined to release her from requisition and redeliver her to the owner, she was redelivered by Army Transport Service to the United States Maritime Commission, which simultaneously delivered her to Eastern Steamship Lines pursuant to a service agreement under which Eastern Steamship Lines as agent for the Commission kept a stand-by custodial crew on board the vessel.

The requisition bareboat charter required the government, prior to redelivery, to restore the vessel to her condition when she was delivered to the United States, ordinary wear and tear excepted, or, in the alternative, if the government should elect not to recondition the vessel, then the United States was obligated to pay the owner "the

amount reasonably expended" so to restore the vessel, plus an amount equal to hire payable under the charter party for the time necessary for such restoration work, and any further amounts necessarily expended by the owner for insurance, wages and subsistence of crew during the period of restoration. To determine what restoration work was required in fulfillment of the charter obligation, the parties held a joint survey commencing February 17, 1947. Ensuing negotiations between the government and the owner failed to produce an agreement. Finally, the government elected to return the vessel without itself making the repairs, under the option above referred to. On July 23, 1947, Eastern Steamship Lines as custodial agent under the service agreement redelivered the vessel to the United States Maritime Commission, and on the same day the Commission redelivered the vessel to Eastern Steamship Lines as owner, thereby terminating the requisition charter. It is recited in the stipulation that during the period February 15 to July 23, 1947, "the Acadia was in an idle status and not employed in any operation or service save as hereinbefore stated." Apparently, since redelivery on July 23, 1947, Eastern Steamship Lines has not had the restoration work done, and so far as the record discloses has not put the vessel into any service. The present libel was filed May 20, 1948.

■ The only issue raised on this appeal is whether the Acadia was "employed as a merchant vessel" within the meaning of § 2 of the Suits in Admiralty Act. If she was not so employed, it is conceded that there is no other basis of jurisdiction in the court below. The Public Vessels Act of 1925, 43 Stat. 1112, 46 U.S.C.A. § 781 et seq., gives jurisdiction to the district courts only over libels brought "for damages caused by a public vessel of the United States, and for compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States"; it thus has no applicability to a contract claim such as that advanced in the case at bar. And since the claim of the present libel is for damages far in excess of $10,000, no action is maintainable in the district court under the Tucker Act, 28 U.S.C.A. § 1346. Hence if the libel is not maintainable under the Suits in Admiralty Act, the owner's only remedy is in the Court of Claims under 28 U.S.C.A. § 1491(4), and it is the government's contention here that suit in the Court of Claims is libelant's proper and only remedy. On the other hand, it is well settled that if the Suits in Admiralty Act is applicable, a libel under that Act is the exclusive remedy, and no action would be maintainable in the Court of Claims. Johnson v. U. S. Shipping Board Emergency Fleet Corp., 1930, 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451; Matson Nav. Co. v. United States, 1932, 284 U.S. 352, 52 S.Ct. 162, 76 L.Ed. 336.

In the Shipping Act of 1916, 39 Stat. 728, 730, 46 U.S.C.A. § 808, it was provided that vessels purchased, chartered, or leased from the U. S. Shipping Board "while employed solely as merchant vessels shall be subject to all laws, regulations, and liabilities governing merchant vessels, whether the United States be interested therein as owner, in whole or in part, or hold any mortgage, lien, or other interest therein." The underlying thought of this provision undoubtedly was that, to the extent that the United States was engaged in commercial operations in competition with private shipping companies, its sovereign immunity ought not to stand as a barrier to the imposition of the normal liabilities to which vessels owned by private parties so engaged were subject. The Act was construed in The Lake Monroe, 1919, 250 U.S. 246, 39 S.Ct. 460, 63 L.Ed. 962, as permitting a district court, under a libel in rem arising out of a collision, to arrest a vessel owned by the United States and chartered to a private company for the commercial transportation of a cargo of coal. This result was deemed to be in conformity with the policy of the Act to subject merchant vessels owned or operated by the United States "to the same duties and liabilities as privately owned merchant vessels with which they competed." 250 U.S. at page 255, 39 S.Ct. at page 463, 63 L.Ed. 962.

■ The inconvenience to the United States resulting from the holding in the

Lake Monroe case led to the enactment of the Suits in Admiralty Act, 41 Stat. 525. Section 1 of that Act provided that "no vessel owned by the United States * * * or in the possession of the United States * * * or operated by or for the United States * * * shall hereafter, in view of the provision herein made for a libel in personam, be subject to arrest or seizure by judicial process in the United States or its possessions". Section 2 provided that "in cases where if such vessel were privately owned or operated, * * * a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States * * * provided that such vessel is employed as a merchant vessel * * *." Other sections of the Act are commented on in Eastern Transportation Co. v. United States, 1927, 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472.

The phrase "such vessel" appearing twice in the above-quoted portion of § 2 of the Suits in Admiralty Act obviously refers back to § 1, and means a "vessel owned by the United States * * * or in the possession of the United States * * * or operated by or for the United States * * *." The phrase in § 2, "a proceeding in admiralty", was held in Eastern Transportation Co. v. United States, 1927, 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472, to mean either a libel in personam or a libel in rem. In that case a vessel which was being operated by the United States in merchant service sank and became a total loss, and libelant's ship was damaged by collision with the unmarked wreck. Hence, a libel in rem would not have been an available remedy even had the wrecked vessel been privately owned or operated. But the Court held that the Suits in Admiralty Act had a wider purpose than merely to substitute the remedy of a libel in personam against the United States in cases where, otherwise, a libel in rem under the Shipping Act of 1916 could have been brought against a vessel owned or operated by the United States; the Act was intended to give a remedy in personam against the United States both in cases where the owner of the vessel, if privately owned, would be personally liable, and in those where only the vessel would be liable. The United States has not suggested that the phrase "provided that such vessel is employed as a merchant vessel" refers to the date on which the libel in personam against the United States is filed, with the result that the waiver of sovereign immunity provided in § 2 must be limited to a case where the vessel is owned or in the possession of the United States, or operated by or for the United States, and employed by the United States as a merchant vessel, at the date of the filing of the libel in personam against the United States. If such were the interpretation, of course without reference to other considerations the present libel could not be maintained. It is stated, however, in 1 Benedict on Admiralty § 194 (6th ed. 1940), that neither employment as a merchant vessel nor ownership by the government at the time of the filing of the libel under § 2 of the Suits in Admiralty Act is necessary to the maintenance of the suit. Cf. Mack Engineering & Supply Co. v. United States, D.C.S.D.N.Y.1922, 291 F. 713; Zeller Marine Corp. v. United States, D.C.S.D.N.Y.1946, 66 F. Supp. 447; Olavarria & Co., Inc. v. United States, D.C.S.D.Ala.1944, 56 F.Supp. 758.

■ We think the general purpose of the Suits in Admiralty Act, to be inferred from the statutory language and the legislative history, is that the United States was to be relieved of the inconvenience of having its vessels seized by judicial process, but otherwise was to be treated on a parity with private shipping companies in respect of liabilities arising out of the commercial operation of vessels. The important thing is to inquire whether the claim asserted in the libel arose out of the employment in merchant service of a vessel owned or in the possession of the United States or operated by or for the United States; if so, then "a libel in personam may be brought against the United States", in cases where an admiralty proceeding in rem or in personam could have been maintained to enforce such claim had such vessel "been privately owned or operated" instead of being owned or operated by the United States.

In the case at bar it is clear that, during the whole period of her active use by the government under the bareboat requisition charter now in question, the S.S. Acadia was employed as a public vessel, not in commercial service. The libelant concedes that the United States could not have been sued under the Suits in Admiralty Act for the stipulated charter hire during the period of such active employment as a public vessel; nor could a libel in personam have been maintained against the United States on account of supplies or repairs furnished to the vessel during such period. The only remedy in such cases would be in the Court of Claims.

 It is contended, however, that the Acadia ceased to be employed as a public vessel on February 15, 1947, on which date the Army Transport Service redelivered her to the Maritime Commission and the Commission put her in the hands of Eastern Steamship Lines as custodial agent pending final redelivery of the vessel to the owner in termination of the requisition charter. The argument is that on that date the vessel reverted to its status as a merchant vessel, and thereafter, with a custodial crew on board under the service agreement, she was "employed as a merchant vessel" within the meaning of § 2 of the Suits in Admiralty Act; that the cause of action stated in the libel arose out of obligations of the United States with respect of the Acadia as a merchant vessel, that is, to restore and redeliver the vessel to the owner as a merchant vessel. We think this argument overlooks the decisive fact that the obligation sued on did not arise as an incident of the employment of the Acadia as a merchant vessel by the United States. As above appears, the announced purpose of the government in taking over the vessel on a bareboat charter basis was to make it available to the Armed Services "for military use as a public vessel"; and during the whole period of the requisition bareboat charter party she was put to no other use than as a public vessel. At no time was she employed by the government in merchant service in competition with private shipping companies. The obligation to restore the vessel, or to bear the cost of such recon-ditioning, as provided in the charter party, resulted from the fact that, as an incident to the use of the Acadia as a public vessel, the government had converted her into a vessel suitable for military transport and hospital service. Under these circumstances the special remedy provided in the Suits in Admiralty Act is not available to the libelant.

We find no authoritative precedent militating against the conclusion we have reached. In James Shewan & Sons, Inc. v. United States, 1924, 266 U.S. 108, 45 S.Ct. 45, 69 L.Ed. 192, the steamship while owned by the United States and engaged in the mercantile trade had some repairs made to her by the libelant in May, 1920. Subsequently, on June 11, 1921, the vessel, which had theretofore been in the merchant service of the United States, was laid up in the out-of-use fleet in the custody of caretakers employed by the Shipping Board, and so remained at and after the time when the libel in admiralty to recover the value of the repairs was filed against the United States in May, 1922. The Court held that the libel could be maintained under the Suits in Admiralty Act. It pointed out, 266 U.S. at page 111, 45 S.Ct. at page 46, 69 L.Ed. 192, that under the Shipping Act of 1916 liability to suit of a vessel owned or controlled by the United States as a merchant vessel depended primarily, not upon the time when the suit was to be brought and the vessel was to be seized, "but upon her character as one solely engaged in merchant service when the transaction occurred out of which the liability grew." The Court further pointed out, 266 U.S. at page 113, 45 S.Ct. at page 46, 69 L.Ed. 192, that it would be a most unjust result to hold that "a mere suspension of the vessel's activity in merchant trade destroyed its quasi personal responsibility for its wrongs done or its liabilities incurred in that trade"; that the Suits in Admiralty Act had no such effect but, as applied to the case before the Court, merely substituted the remedy of a libel in personam for the remedy of a libel in rem which would have been available to the repairman under the Act of 1916. In Eastern Transportation Co. v. United

States, 1927, 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472, the libelant was allowed to recover under the Suits in Admiralty Act for the loss of a barge which collided with the unmarked wreck of a government-owned vessel which had sunk a month previously while employed by the United States solely as a merchant vessel. The Court had little difficulty in concluding that the cause of action arose out of the government's commercial activities; the ship was being used as a merchant vessel when it sank, and the United States was under the same duty as a private owner to mark the wreck. The Court rejected the contention that the phrase in § 2 of the Suits in Admiralty Act "is employed as a merchant vessel" required that it should be actively thus employed at the time of the collision. It was enough that the cause of action grew "out of the responsibility of the government for a merchant vessel which in the course of its employment had become a danger to navigation and which imposed a duty to avoid that danger." 272 U.S. at page 692, 47 S.Ct. at page 293, 71 L.Ed. 472.

The order of the District Court is affirmed, with costs on appeal to the appellee.