## SINCLAIR REFINING COMPANY
### v.
### The UNITED STATES.
### No. 49799.

United States Court of Claims.
Oct. 5, 1954

Herbert M. Lord, New York City, for plaintiff. Burlingham, Hupper & Kennedy, New York City, were on the briefs.

Leavenworth Colby, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

This case is before us on defendant's motion for summary judgment, on the ground that there is no genuine issue as to any material fact, and that plaintiff's action is based on that character of maritime contracts of which, it is said, the United States District Courts have exclusive jurisdiction.

Plaintiff entered into charter parties with the defendant for the use of its tankers, the Sheldon Clark, the Sinclair Rubilene, the E. R. Kemp, the L. V. Stanford, the Joseph M. Cudahy, the Patrick J. Hurley, the Daniel Pierce, the E. W. Sinclair, the Sinclair Superflame, and the Virginia Sinclair. The charter parties relative to the tankers Sheldon Clark, Sinclair Rubilene, E. R. Kemp, L. V. Stanford, Joseph M. Cudahy, Patrick J. Hurley, E. W. Sinclair, Sinclair Superflame, and Virginia Sinclair were designated "Warshipoiltime, Form No. 102." Such a charter party was also entered into relative to the ship Daniel Pierce. This charter party was entered into on April 20, 1942. Later, on September 1, 1944, plaintiff and defendant entered into another charter party relative to the Daniel Pierce, known as "Warshipdemise (Rev.), Form No. 103 (Rev.)."

The charter parties "Warshipoiltime" were time charters. On them plaintiff

sues in its first cause of action, with respect to the Sheldon Clark, for $1,309.97, "representing the value of pending war risk insurance on the date of delivery of said vessel under said charter."

With respect to the Sinclair Rubilene plaintiff sues in its second cause of action for $41,682.54 "on account of adjusted credits for war risk insurance and crew war bonuses."

With reference to the E. R. Kemp, in its third cause of action, it sues for $404.-79 "for pending war risk insurance on the date of delivery of the said vessel under said charter."

With respect to the L. V. Stanford, it sues in its fourth cause of action for $29,-647.36 "on account of adjusted credits for war risk insurance."

With respect to the Joseph M. Cudahy, it sues in its fifth cause of action for $35,-772.98 "on account of adjusted credits for war risk insurance and charter hire."

With respect to the Patrick J. Hurley, in its sixth cause of action, it sues for $15,525.14 "on account of adjusted credits for war risk insurance and crew war bonuses."

With respect to the Warshipoiltime charter party of April 20, 1942, with respect to the Daniel Pierce, in its seventh cause of action it sues for $9,363.82 "on account of adjusted credits for war risk insurance, crew war bonuses, charter hire, wages and subsistence."

With respect to the Virginia Sinclair, it sues in its fourteenth cause of action for $3,548.30 "representing adjustments of hire and final charter hire, after crediting defendant with certain periods of off-hire."

In addition to its claim mentioned above with respect to the Daniel Pierce, plaintiff also sues in its eighth cause of action with respect to this ship for the sum of $2,457.17 "on account of off-hire adjustments."

With respect to the Sinclair Rubilene, the plaintiff sues in its eleventh cause of action for $61,973.81, which amount it alleges defendant wrongfully withheld, representing one month's hire on account of alleged unsettled off-hire credits.

With respect to the E. W. Sinclair, in its twelfth cause of action plaintiff sues for $59,431.39, which amount it alleged defendant wrongfully withheld, representing one month's hire on account of alleged unsettled off-hire credits.

With respect to the Sinclair Superflame, in its thirteenth cause of action, plaintiff sues for $32,283.41, which amount it alleges defendant wrongfully withheld, representing one month's hire on account of alleged unsettled off-hire credits.

Also, with respect to the Daniel Pierce, plaintiff sues in its ninth cause of action on the charter party entered into September 1, 1944, known as "Warshipdemise (Rev.), Form No. 103 (Rev.)," under which it is alleged plaintiff and defendant entered into a bareboat charter, which provided that the charterer before redelivery would restore the vessel to "at least as good condition and class as upon delivery," and that all "outfit, equipment, furniture, furnishings, appliances, spare and replaced parts" belonging to said vessel would be returned to plaintiff on redelivery and that "any such items lost, destroyed, damaged, or so worn in service as to be unfit for use" in plaintiff's service "shall be replaced and made good by the charterer." It is alleged that upon redelivery of the vessel, plaintiff determined that it was necessary to make repairs, costing $186,080.44 in order to restore the vessel into substantially the condition existing prior to delivery under the charter. It sues for this amount.

It also sues in its tenth cause of action with respect to the Daniel Pierce for $5,-000, to which it alleges it is entitled on account of "an adjustment of inventory."

Finally, in its fifteenth cause of action plaintiff sues for $4,200 "for liquidating the business and accounts of plaintiff's tankers Albert E. Watts, E. R. Kemp, E. W. Sinclair, Flagship Sinco, L. V. Stanford, Sheldon Clark, H. C. Sinclair, Sinclair Opaline, Sinclair Rubilene, and Sinclair Superflame."

The causes of action alleging amounts due under war risk insurance policies are either governed by our decision rendered this day in United States Lines Company v. United States, Ct.Cl., 124 F.Supp. 375, or by our decision this day rendered in Polar Compania De Navegacion, Ltda., as owner of the Steamship Penelopi, v. United States, Ct.Cl., 124 F.Supp. 625. The causes of action for crew war bonuses, charter hire, and wages and subsistence under the Warshipoiltime charters, and also the causes of action based on off-hire credits are governed by the latter decision. Also, the sum claimed in the fifteenth cause of action "for liquidating the business and accounts of plaintiff's tankers," which it names, is governed by our decision in Polar Compania De Navegacion, Ltda., as owner of the Steamship Penelopi v. United States, Ct.Cl., 124 F.Supp. 625.

It remains only to consider the charter party entered into on September 1, 1944, designated "Warshipdemise (Rev.), Form No. 103 (Rev.)," relative to the tanker Daniel Pierce. This was a bareboat charter. Under it the vessel was manned by a crew furnished by defendant and under defendant's exclusive control and direction. Although plaintiff alleged that the vessel was chartered "for an agreed rate of hire for use as a public vessel of the United States," the use actually made of this vessel by the defendant is not alleged. Whether or not it was used as a merchant vessel, we do not know, and, therefore, under the Supreme Court's decision in Matson Navigation Co. v. United States, 284 U.S. 352, 52 S.Ct. 162, 76 L. Ed. 336, the necessary facts are not alleged to confer jurisdiction on this court.

This case might be disposed of on this ground; but even if we assume she was chartered for or engaged in public use, as plaintiff contends, it would not necessarily follow that she was not employed as a "merchant vessel" within the meaning of the Suits in Admiralty Act, 41 Stat. 525, 46 U.S.C.A. § 741 et seq., because that Act specifically covers, inter alia, Government owned or operated vessels, which are admittedly public vessels in

public use, as those terms are ordinarily understood. It is clear from the Suits in Admiralty Act, supra, that public vessels can be employed as "merchant vessels" within the meaning of that Act. The Public Vessels Act, 43 Stat. 1112, 46 U.S.C.A. § 781, et seq., the sister statute of the Suits in Admiralty Act, supra, covers those public vessels not employed as "merchant vessels" within the meaning of the Suits in Admiralty Act. Consequently, the question is whether the vessel was employed as a "merchant vessel" within the meaning of the Suits in Admiralty Act, supra, or as a "public vessel" within the meaning of the Public Vessels Act, supra. We do not decide this question for the reasons about to be given.

Under the Public Vessels Act, suit may be brought against the United States "for damages caused by a public vessel of the United States, and for compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States". 46 U.S.C.A. § 781. Section 2 of the Act provides: " * * * Such suits shall be brought in the district court of the United States for the district in which the vessel or cargo charged with creating the liability is found within the United States".

In determining whether or not a suit on a contract between the owner of the vessel and the United States under a bareboat charter comes within the terms of this statute, we should bear in mind the following concept of actions in admiralty as expressed by the Supreme Court in Canadian Aviator, Ltd., v. United States, 324 U.S. 215, 224, 65 S.Ct. 639, 644, 89 L. Ed. 901:

"The use of the phrase 'caused by a public vessel' constitutes an adoption by Congress of the customary legal terminology of the admiralty law which refers to the vessel as causing the harm although the actual cause is the negligence of the personnel in the operation of the ship. Such personification of the vessel, treating it as a juristic person whose acts and omissions, although brought about by her personnel, are personal acts of the

ship for which, as a juristic person, she is legally responsible, has long been recognized by this Court. [Citing authorities.]"

In that case, plaintiff's vessel, the Cavelier, was being guided by and was following directly astern the YP 249, a Government vessel, in accordance with orders of the Government. While so doing, it "struck a submerged wreck and sustained serious damages." The question was whether or not these damages were caused by a public vessel of the United States, to wit, YP 249. It was held that it was, since it was the juristic person which had caused plaintiff's vessel to strike this submerged wreck, although it itself had not collided with plaintiff's vessel.

Later, in American Stevedores, Inc., v. Porello, 330 U.S. 446, 67 S.Ct. 847, 850, 91 L.Ed. 1011, the Supreme Court held that the Public Vessels Act covered a claim by a longshoreman on account of injuries sustained while working in the hold of the U. S. S. Thomas Stone, a public vessel of the United States. The court intimated, although it did not so decide, that the Public Vessels Act was intended to give the same relief against the Government with respect to public vessels as was given against it by the Suits in Admiralty Act with reference to merchant vessels owned or operated by or for the United States. In its opinion the court quoted a letter from the Attorney General, which was incorporated by a Congressional Committee reporting on a companion bill, reading in part as follows:

" 'The proposed bill intends to give the same relief against the Government for damages * * * caused by its public vessels * * * as is now given against the United States in the operation of its merchant vessels, as provided by the suits in admiralty act of March 9, 1920.' "

In Calmar Steamship Corp. v. United States, 345 U.S. 446, 73 S.Ct. 733, 97 L. Ed. 1140, the question was whether or not a privately owned vessel chartered to the United States under a time charter and carrying munitions of war was a mer-

chant vessel. The Court held that it was. In the course of its discussion the Supreme Court said, beginning on page 454 of 345 U.S., on page 737 of 73 S.Ct.:

"'* * * Nor is the problem the same when a vessel owned, absolutely or *pro hac vice,* by the United States is involved as when one privately owned and operated is in question. In the former case the consequence of holding that a vessel was not 'employed as a merchant vessel' is, in the great number of instances, that the libel is dismissed under the Suits in Admiralty Act *only to be heard under the Public Vessels Act in the same admiralty court.* When as here the vessel is privately owned and operated, however, to hold that she was not employed as a merchant vessel is to relegate the libelant, on a contract claim substantial enough not to be cognizable on the law side under the Tucker Act, 28 U.S.C. (Supp. III) § 1346, 28 U.S.C.A. § 1346, to the Court of Claims. Yet the District Courts are, in our judicial system, the accustomed forum in matters of admirabilty; everything else being equal, no efforts should be made to divert this type of litigation to judges less experienced in admiralty. *The Suits in Admiralty Act and the Public Vessels Act are not to be regarded as discrete enactments treating related situations in isolation. Hence there is no reason why a claim arising in connection with a vessel bareboat chartered by the United States and carrying war material should be heard by a District Court, while a like claim relating to a vessel chartered as was the Portmar and carrying the same type of cargo, should require an action to be filed in the Court of Claims.* [Italics ours.]"

Of course this case does not decide our problem, but is clearly intimates that if the vessel is a merchant vessel, the district courts have jurisdiction of actions concerning it under the Suits in Admiralty Act, supra, and if it is a public vessel, the district courts have jurisdiction under the Public Vessels Act, supra.

However, in the Calmar case, in note 8 on page 456, of 345 U.S., on page 738 of 73 S.Ct., the court said:

"It is not to be assumed that all claims sounding in contract can form the basis of a suit under the Public Vessels Act. The Act expressly authorizes towage and salvage claims. We intimate no opinion as to other claims, and do not suggest that all or any of the causes of action in this very suit would or would not qualify under the Public Vessels Act. There are cases in which jurisdiction over contract claims other than towage or salvage has been assumed. Thomason v. United States, 9 Cir., 184 F.2d 105; United States v. Loyola, 9 Cir., 161 F.2d 126. But cf. Eastern S. S. Lines v. United States, 1 Cir., 187 F.2d 956. All that matters for our purpose is that there is a class of cases, no matter how narrow, which, if the cargo test of jurisdiction is applied, will be heard by the District Courts in admiralty when a vessel owned by the United States is involved, and in the Court of Claims when the vessel was chartered as was the Portmar. It is not our task, of course, to torture the Suits in Admiralty and Public Vessels Acts into an all-inclusive grant of jurisdiction to the District Courts. But equivocal language should be construed so as to secure the most harmonious results."

The Ninth Circuit in United States v. Loyola, 161 F.2d 126, held that a seaman was entitled to recover under the Public Vessels Act on a contract claim for his maintenance and cure of pulmonary tuberculosis.

In Thomason v. United States, 184 F.2d 105, the same court held the United States liable under the Public Vessels Act for overtime and bonuses claimed by a seaman. In this case the court said, 184 F.2d at page 107:

"The sustaining of jurisdiction under the Public Vessels Act in other than collision cases is in accord with the evident purpose of Congress to provide for the adjudication of seaman controversies in the admiralty courts. Pursuant to that purpose, Congress has passed *two complementary jurisdictional statutes, the Suits in Admiralty Act for cases where the public vessel involved is employed as a merchant vessel, and the Public Vessels Act where the vessel is employed exclusively as a public vessel.* It is a rational interpretation to say that in providing a forum for the adjudication of maritime claims uniformity was sought. To hold that seamen's wage claims are not justiciable under the Public Vessels Act would not diminish the liability of the United States for such claims, but would merely transfer the adjudication of all such claims to jurisdiction under the Tucker Act, thereby defeating the policy of uniformity. Cf. American Stevedores, Inc., v. Porello, 1947, 330 U.S. 446, 453, 67 S.Ct. 847, 91 L.Ed. 1011. [Italics ours.]"

But, Eastern S. S. Lines v. United States, 187 F.2d 956, decided by the First Circuit, appears to be in conflict with the Ninth Circuit decisions. In that case the shipowner sued for $5,000,-000, the estimated cost of reconditioning its vessel, the S. S. Acadia, which the United States had used for the transportation of troops and as a hospital ship under a bareboat charter. The court said that such a claim was not covered by the Public Vessels Act, 187 F.2d at page 959.

■■ Admittedly, the district courts have exclusive jurisdiction under the Suits in Admiralty Act of claims for compensation for the use of merchant vessels under time charters to the United States. Matson Navigation Co., v. United States, supra; Calmar Steamship Corp. v. United States, supra. We can conceive of no reason why the same rule should not be applied in the case of a bareboat charter. The only difference in the two is that in one case a shipowner mans the vessel, and in the other the

Government mans it. This conceivably might make a difference in a claim arising out of the operation of the vessel, but we can see no reason for a difference with respect to a claim arising out of a contract for the use of the vessel. It would be an anomaly to say that the owner of a vessel had to sue the United States in an admiralty court on a time charter, but it could not sue there on a bareboat charter.

So that, whether this action is under the Public Vessels Act or the Suits in Admiralty Act, exclusive jurisdiction lies in the district court.

This interpretation is in accord with the general legislative policy of conferring exclusive jurisdiction upon the district courts of maritime causes of action against the United States, the accustomed forum in matters of admiralty, and is in harmony with the principle of the cases cited above.

Defendant's motion for summary judgment is granted, and plaintiff's petition is dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.