Giovanni **ALIOTTI** and Sebastiano Aliotti, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 13872.

United States Court of Appeals Ninth Circuit.

April 13, 1955.

Joseph L. Alioto, Walter F. Calcagno, San Francisco, Cal., for appellants.

Warren E. Burger, Asst. Atty. Gen., Keith R. Ferguson, Leavenworth Colby, Sp. Assts. to Atty. Gen., for appellee.

Before HEALY and BONE, Circuit Judges, and MURRAY, District Judge.

HEALY, Circuit Judge.

In February of 1942 the United States, acting through the War Shipping Administration, requisitioned appellants' motor fishing vessel Sea Star (a boat of 107 tons gross register) under authority of 46 U.S.C.A. § 1242. After taking possession a bareboat charter party, dated March 23, 1942, was executed by the parties. The charter provided among other things that, unless actually or constructively lost, the vessel on redelivery to the owners was to be restored by the charterer in a condition at least as good as when delivered to it, less ordinary wear and tear, or in lieu of making restoration, the charterer, at its option, might pay the owners an amount sufficient to place the vessel in such condition.

In August of 1943 the government returned the Sea Star to its owners, electing at the time to pay them the cost of reconditioning rather than to perform the work itself. In May of 1944, the vessel being then in possession of appellants, a written settlement agreement was entered into in which the United States undertook to pay, and did pay, the sum of $9,034.39 in full satisfaction and settlement of its obligation to the owners under the reconditioning provision.

In February of 1949 appellants brought this suit, assertedly under the Tucker Act, to recover from the United States the sum of $10,000. They alleged that the amount of money required and actually paid by them for the restoration of the Sea Star was greatly in excess of that which the government had paid them. The amount of their claim in excess of $10,000 was formally waived. The theory of the suit is that the settlement agreement of May 2nd, 1944, and

an earlier agreement made or release given at the time of redelivery, had been exacted from appellants under duress—that is, by threat of the government to withhold the return of the vessel unless the appellants accepted a sum which the government knew was inadequate for shipyard repair. The trial court found that the final settlement agreement of May 2, 1944 was voluntarily made and was a valid and binding contract. Judgment was accordingly given in favor of the government, and this appeal followed.

We do not consider the merits of the appeal since, for reasons to be stated, we are of opinion that jurisdiction is lacking under the Tucker Act. Appellants' exclusive remedy, we think, was under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq. or the Public Vessels Act, 46 U.S.C.A. § 781 et seq. both of which provide a limitation of two years within which suit may be instituted. As already appears, this suit was not brought until more than four years after the alleged cause of action arose.

Appellants insist that the district court possessed Tucker Act jurisdiction. They point to the fact that the Sea Star was requisitioned pursuant to § 902 of the Merchant Marine Act of 1936, 46 U.S.C.A. § 1242. As showing that the Tucker Act was intended by Congress to afford a remedy in situations such as the present, they quote certain passages contained in subdivisions (c) and (d) of § 1242, to the following effect:

> "(c) * * * In the event of loss or damage to such property, due to operation of a risk assumed by the United States under the terms of a charter prescribed in this subsection, but no valuation of such vessel or other property or mode of compensation has been agreed to, the United States shall pay just compensation for such loss or damage, to the extent the person entitled thereto is not reimbursed therefor through policies of insurance against such loss or damage.

> "(d) In all cases, the just compensation authorized by this section shall be determined and paid by the Commission as soon as practicable, but if the amount of just compensation determined by the Commission is unsatisfactory to the person entitled thereto, such person shall be paid 75 per centum of the amount so determined and shall be entitled to sue the United States to recover such further sum as, added to said 75 per centum, will make up such amount as will be just compensation therefor, in the manner provided for by sections 41(20) and 250 of Title 28 * * *."

The pertinent references here are to the Tucker Act, now designated as 28 U.S.C.A. § 1346, and to the jurisdiction of the Court of Claims, now defined in 28 U.S.C.A. § 1491 et seq.

Apart from the passages quoted, section 1242, and particularly subdivision (c) thereof, needs further exploring. The subdivision requires the submission of a proposed charter to the owner whose vessel has been requisitioned for hire, setting forth the terms as to hire, etc., which the War Shipping Administration thinks should govern the relations between the United States and the owner. If the owner does not execute the proposed charter or agree to the rate of hire or other terms prescribed, then "just compensation" shall be paid to the owner for the use of the vessel or for its loss or damage due to operation; and if just compensation is not paid suit therefor against the United States will lie in the manner provided by the statute. Where, however, the parties reach an agreement on the compensation to be paid in respect of a named item or items, it is implicit in the statute that the charter itself shall govern.[1]

---

1. The legislative history of subdivisions (c) and (d) of section 902 clearly shows that Congress intended the charter to govern in event the shipowner accepts it. House Report, 660, 76th Cong., 1st Sess., pp. 4–5, (adopted by the Senate, Senate Report 678, 76th Cong., 1st Sess.). At page 5, the House Report stated that

Here, the proposed charter party submitted was accepted by appellants and was executed by them and on behalf of the United States. Article 16 thereof, denominated "Special Provisions," left but two matters unsettled; and in respect of those matters the owners expressly reserved their rights to claim just compensation under the statute and applicable provisions of the Constitution. Those matters were (a) the precise sum to be paid for the use of the vessel, and (b) the amount of just compensation payable in event the vessel were actually or constructively lost, or purchased, or requisitioned for title. By addenda to the charter subsequently executed the parties agreed upon the amount to be paid for rental, and clause (a) of Article 16 relating thereto was formally deleted. This left open only the contingencies expressed in clause (b). The latter, of course, are not of present concern.

The clause of the charter expressing the agreement presently in question contains no reservation of rights to just compensation under the statute or under the Constitution. Obviously there was no occasion for such reservation since on that subject the contract governed the relationship. Accordingly the suit cannot be considered as one for just compensation under § 902 of the Merchant Marine Act; it is merely one for alleged breach of the charter party. Compare Matson Navigation Co. v. United States, 284 U.S. 352, 52 S.Ct. 162, 76 L.Ed. 336. Involved there was a clause of a requisition charter covering an agreement on the part of the government to reimburse the vessels' owner "for any proper increases in wages" of officers and crew over the standard prevailing at the date

of the requisition. The suit had been brought in the Court of Claims to recover just compensation for inceased wages paid. The Supreme Court held the Court of Claims to be without jurisdiction, saying that the effect of the agreement was to define the rights of the parties "as effectively and completely and with the same consequences as though no requisition had ever been made."

Appellants cite numerous decisions as supporting their jurisdictional argument, but these appear to afford little if any analogy. The Court of Claims decision in American-Hawaiian Steamship Co. v. United States, 129 Ct.Cl. 365, 124 F. Supp. 378 is most heavily stressed. In that case the owner of the requisitioned vessel had declined to accept either the form of the charter proposed or the rate of hire offered, contenting itself for the time being with collecting the statutory 75 per centum of the rate of hire proposed by the War Shipping Administration. On return of the vessel the steamship company sued in the Court of Claims to recover just compensation as provided by the statute, and was awarded judgment for hire at a rate larger than that fixed by the Administration. Clearly, the suit was one predicated on the statute, no agreement between the parties having been reached.

There is argument to the effect that the Sea Star was not, while under charter, used as a merchant vessel but was employed as a public vessel, hence the cause was not maintainable under the Suits in Admiralty Act; and it is said that neither was jurisdiction of the cause conferred by the terms of the Public Vessels Act.[2] Appellants' complaint is barren of allegation as to the use to

"If the owner accepts the charter tendered, all further argument or contention as to just compensation is at an end, because the charter is a contract binding on both the owner and the Government."

2. 46 U.S.C.A. § 781.
"Libel in admiralty against or impleader of United States.
"A libel in personam in admiralty may

be brought against the United States, or a petition impleading the United States, for damages caused by a public vessel of the United States, and for compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States: Provided, That the cause of action arose after the 6th day of April, 1920. Mar. 3, 1925, c. 482, § 1, 43 Stat. 1112."

which the Sea Star was put. Some intimation is to be found in the record that it had been employed by the government otherwise than as a merchant vessel, but no definite proof was offered on the subject. Assuming that the point has significance, the burden was clearly on appellants of proving a cause within the jurisdiction of the district court. Matson Navigation Co. v. United States, supra, 284 U.S. at page 359, 52 S.Ct. 162.

■ In any event we think it unimportant whether the Sea Star was employed in one capacity or in the other. The Suits in Admiralty Act and the subsequently adopted Public Vessels Act are complementary jurisdictional statutes providing for admiralty suits against the United States. It has been generally recognized that the later statute supplements the first and was designed by Congress to fill an existing gap. As a practical matter it is often difficult and sometimes impossible to determine whether and when a ship being operated by or for the United States is to be relegated to one category or to the other. In the Ninth Circuit the Public Vessels Act has been given broad scope and applied to a variety of situations. See Thomason v. United States, 9 Cir., 184 F.2d 105, 107, involving a suit by seamen to recover overtime wages; United States v. Loyola, 9 Cir., 161 F.2d 126—an action for maintenance and care. In *Thomason* many authorities are cited indicative of an increasing recognition of the greater breadth and scope of the Public Vessels Act as differing jurisdictional questions have been presented. It was thought to be "a rational interpretation to say that in providing a forum for the adjudication of maritime claims uniformity was sought. To hold that seamen's wage claims are not justiciable under the Public Vessels Act would not diminish the liability of the United States for such claims, but would merely transfer the adjudication of all such claims to jurisdiction under the Tucker Act, thereby defeating the policy of uniformity."

In Calmar S. S. Corp. v. United States, 345 U.S. 446, 455, 73 S.Ct. 733, 737, 97 L.Ed. 1140, the Court remarked that "the Suits in Admiralty Act and the Public Vessels Act are not to be regarded as discrete enactments treating related situations in isolation." While it is true that in footnote 8 of the opinion the Court declined to commit itself to the doctrine of the *Thomason* and *Loyola* cases (deeming that to be unnecessary to decision), nevertheless the general philosophy of its opinion seems in harmony with the views obtaining in this circuit. It is notable that in a case factually on all fours with the present, Sinclair Refining Company v. United States, 1954, 129 Ct.Cl. 474, 124 F.Supp. 628, the Court of Claims held itself to be without jurisdiction. The court there cited and quoted liberally from *Calmar* as well as from *Thomason,* and apparently experienced no qualms in following the doctrine of the latter.

Thus far we have not mentioned Eastern S. S. Lines v. United States, 1 Cir., 187 F.2d 956, a case on which appellants largely rely in support of their jurisdictional argument. No purpose would be served by discussion of that decision. Enough to say that it is at variance with the views prevailing in this circuit.

Judgment affirmed.