States, either legal or equitable. We so report to the House of Representatives.

It is so ordered.

JONES, Chief Judge, and LARA-MORE and MADDEN, Judges, concur.

LITTLETON, Judge, is of the opinion that plaintiff has an equitable claim.

**COMPANIA ITHACA DE VA-PORES, S. A.**

v.

**The UNITED STATES.**

No. 49813.

United States Court of Claims.

March 6, 1957.

See 124 F.Supp. 627.

William A. Wilson, New York City, for plaintiff. Robert J. Nicol, New York City, on the brief.

Charles S. Haight, Jr., Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant. Leavenworth Colby, Washington, D. C., on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

Plaintiff's amended petition is based upon an alleged settlement with the Maritime Commission of its claim for damage to its vessel while it was under time charter to the defendant. The question now presented to us is whether or not defendant's obligation to respond in damages, which is of course maritime in nature, has been supplanted by a contract to pay a certain sum, which gives this court jurisdiction.

Before redelivery of plaintiff's vessel, the S.S. Moldova, it was surveyed, and redelivery specifications embodying 272 items were prepared and agreed upon by representatives of the plaintiff and the War Shipping Administration, with the exception of plaintiff's claim for damage to its vessel as the result of the carriage of bauxite. All of plaintiff's claims have been paid except this one. For this one it now sues for $60,400.91. While plaintiff's petition has not been so amended, we suppose we should treat it as having been amended to sue for $19,-270, the amount of the settlement agreed

to by it, and which it alleges the Maritime Commission agreed to.

The parties negotiated for the settlement of plaintiff's claim for bauxite damage, and finally reached an agreement with the Chief, Bureau of Operations. Accordingly, this official presented to the Maritime Commission a memorandum dated September 15, 1947, stating that the parties had reached an agreement as to the items clearly chargeable to the bauxite damage, and recommending the payment of 50 percent of the total amount of the items agreed upon, in full settlement of plaintiff's claim. This 50 percent amounted to $19,270. The Assistant General Counsel endorsed the memorandum "no legal objection."

After discussion of the memorandum, it was referred by the Commission to the General Counsel for review and report. He suggested that the memorandum be rewritten to show that the date of defendant's obligation for this damage arose on the date of the contract, rather than on the date of the delivery. As rewritten, it was again presented to the Maritime Commission.

The minutes of the Commission, dated December 8, 1947, recited:

"After discussion, by the unanimous 'yea' vote of the members of the Commission present, the recommendations contained in the foregoing memorandum were approved *subject to clearance by the General Counsel, and the proper officers of the Commission were authorized and directed to take any and all actions necessary and proper to carry the action of the Commission as above set forth fully into effect.*" [Italics ours.]

On the following day, December 9, 1947, the Secretary of the Commission addressed a memorandum to the General Counsel reading as follows:

"At a meeting on December 8, 1947, the Commission approved the attached memorandum dated September 15, 1947, from the Chief, Bureau of Operations, subject to clearance by you.

"Kindly furnish me with your clearance as soon as possible."

Plaintiff's counsel was advised of the action taken by the Commission by someone in the office of the Secretary of the Commission, on the occasion of his visit to the Secretary's office on December 8, 1947, to ascertain the action taken.

The plaintiff claims that this action of the Commission was an approval by it of the agreement entered into between plaintiff and the Chief, Bureau of Operations, and constituted a novation, the substitution of a contract to pay a definite amount for and in lieu of its original claim for damages, upon which contract plaintiff has the right to sue in this court.

We do not think this position can be sustained.

The Commission's approval of the settlement was not unequivocal. It was approved, "subject to clearance by the General Counsel,"—whatever that may mean. Before the General Counsel had cleared it, Commissioner Raymond S. McKeough, who was not present when the Commission met on December 8, 1947, addressed a memorandum to the General Counsel advising him that he was asking the Commission to reconsider its action. At the next meeting of the Commission the matter was again discussed, but was "laid over" without action. The memorandum was later presented to the Commission at its meetings on January 9, January 13, January 20, February 4, February 24, and March 2, 1948, and at each meeting was "laid over." Finally, on March 5, it was again presented to the Commission, accompanied by a memorandum from the General Counsel recommending that plaintiff's claim be disallowed. This recommendation was approved by the Commission, and the proposed settlement was disapproved.

We are not sure just what the Commission meant by its approval of the agreement by the plaintiff and the Chief

of the Bureau of Operations, "subject to clearance by the General Counsel"; but, whatever the Commission may have meant by this, it is clear that no final action had been taken approving the settlement and, therefore, the Commission has never promised to pay the amount agreed upon. Since there was no promise to pay, plaintiff's only right of action is on its original claim; there was no promise upon which it can sue.

If we assume, as plaintiff contends, that the phrase, "subject to clearance by the General Counsel," means only, subject to his putting the agreement into formal legal terminology, still, there was no promise to pay until this had been done. Even if the phrase meant what plaintiff contends, no promise to pay would have arisen until after counsel had prepared the necessary documents setting forth the agreement and a promise to pay, in consideration of the release by plaintiff of its claim against the defendant, or whatever else. counsel may have thought necessary and proper to include in the documents. As we have seen, this was never done.

The most that plaintiff can make out of the action of the Commission on December 8, 1947, was an agreement on the amount of the liability and of the amount payable in satisfaction thereof; but the terms and conditions on which payment would be made had not been specified. Therefore, plaintiff had no new promise upon which it can sue, and can avail itself of the purported agreement only in an action upon its original claim for damage to its vessel while it was under charter to plaintiff.

This court has no jurisdiction of such an action, exclusive jurisdiction having been vested in the district courts under the Suits in Admiralty Act, 41 Stat. 525, 46 U.S.C.A. § 742.

The foregoing is supported by the principle of M. & J. Tracy, Inc., v. United States, 111 F.Supp. 956, 125 Ct.Cl. 70,

certiorari denied 346 U.S. 854, 74 S.Ct. 68, 98 L.Ed. 368; Sinclair Refining Co. v. United States, 124 F.Supp. 628, 129 Ct.Cl. 474; Isthmian S. S. Co. v. United States, 130 F.Supp. 336, 131 Ct.Cl. 472; Fox v. Patton, D.C., 22 F. 746; and the case upon which plaintiff relies, Adams v. United States, D.C., 101 F.Supp. 956, affirmed, 1 Cir., 1953, 201 F.2d 150. See also United States v. Massey, 3 Cir., 5 F.2d 1013.

It results that plaintiff's petition must be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, Judge, concur.

MADDEN, Judge (dissenting).

I see nothing in this case except a refusal by the Maritime Commission to do what it had contracted to do, because it changed its mind after it had made the contract. Private persons and private enterprises do not have the privilege of changing their legal obligations, by changing their minds. It is apparent that clearing by the General Counsel was nothing but a formal procedural step, and there is no indication whatever that the General Counsel found anything wrong with the contract. The member of the Commission who was absent when the Commission accepted the plaintiff's offer finally convinced the Commission that it should repudiate its contract, and the General Counsel had nothing to do with that action. I think what the Commission did was a plain breach of contract for which there was no moral nor legal justification. The court is aware, of course, that the relegation of the plaintiff's claim to its status as a maritime contract is a complete denial of relief to the plaintiff, since the Statute of Limitations has run on the maritime contract claim.

LITTLETON, Judge, joins in the foregoing dissenting opinion.