CONTINENTAL CASUALTY COMPANY
v.
UNITED STATES.
No. 63-57.

United States Court of Claims.
Dec. 4, 1957.

Daniel Mungall, Jr., Philadelphia, Pa., for plaintiff. James E. Gallagher, Jr., and Stradley, Ronon, Stevens & Young, Philadelphia, Pa., were on the briefs.

Leavenworth Colby, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant. Kathryn H. Baldwin and Lawrence F. Ledebur, Washington, D. C., were on the briefs.

WHITAKER, Judge.

Plaintiff was surety on a contract between the Maritime Commission and the Pennsylvania Drydock & Shipbuilding Company for the repair of certain vessels that had been for the four prior years laid up at Lee Hall, Virginia, including the SS. William Tyler and the SS. Franklin King. The surety bond was required by the "Miller Act" (40 U.S.C.A. § 270a), reading:

> "Before any contract * * * for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds * * *."

The contractor defaulted and the surety paid claims of laborers and materialmen in the sum of $40,861.08 as to SS. William Tyler, and $23,590.45 as to SS. Franklin King. The surety alleges the United States is indebted to the Pennsylvania Drydock & Shipbuilding Company in the sum of $45,769.00 as to SS. William Tyler, and $24,539.30 as to SS. Franklin King, and sues to recover so much of said amount it paid on account of the contractor's default.

Defendant moves to dismiss on the ground that this court has no jurisdiction, exclusive jurisdiction being vested in the courts of admiralty by either the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq. or the Public Vessels Act, 46 U.S.C.A. § 781 et seq., or both.

The question involves more than the proper forum to adjudicate the controversy. The statute of limitations on suits under both the Suits in Admiralty

Act and the Public Vessels Act is two years. This period has run since plaintiff's cause of action accrued. The limitation of six years on suits on claims for breach of contract in this court has not run. Therefore, if this court has jurisdiction, plaintiff has a remedy; if not, it has none.

The bonds which plaintiff executed were required by a statute applicable, not specifically to vessels, but to "any building or public work." Had these been contracts for the repair of a building or a dam or a runway in an airfield, or other public work, this court would have jurisdiction under section 1491 of Title 28 U.S.C. giving the court jurisdiction of suits on contracts with the United States, or for damages not sounding in tort. But since they were contracts for the repair of vessels laid up in drydock, defendant says jurisdiction was taken away from this court by the Suits in Admiralty Act, passed in 1920, or by the Public Vessels Act passed in 1925.

It is difficult to see the difference between a suit on a contract for the repair of a vessel that had been out of service for four years, and a contract for the repair of a building or a dam, so far as jurisdiction of such a suit is concerned. What reason could there be for clothing this court with jurisdiction of a contract for the repair of a building at Lee Hall, Virginia, and denying it jurisdiction of a contract to repair a vessel that had lain alongside the building for the last four years?

There can be no doubt that this court has jurisdiction under section 1491 of Title 28, because it is a suit on a contract, unless that jurisdiction was taken away by the Suits in Admiralty Act passed in 1920, or by the Public Vessels Act passed in 1925.

It is difficult to see how this suit could come within the Suits in Admiralty Act, because, to come within it, the vessel must be employed as a merchant vessel or as a tugboat, and at the time the repairs were made the vessel was not employed at all, and it was not known in what character she would be employed.

But defendant says, since the vessel was a public vessel, if the suit does not come under the Suits in Admiralty Act, it comes under the Public Vessels Act. Is this so?

The language of the Public Vessels Act does not seem to cover such a suit. It reads (Act of March 3, 1925, c. 482, sec. 1, 43 Stat. 1112, 46 U.S.C.A. § 781):

"A libel in personam in admiralty may be brought against the United States, or a petition impleading the United States, for damages caused by a public vessel of the United States, and for compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States * * *."

This speaks of "damages caused by a public vessel." This brings to mind damages as the result of a tort, as a collision. The Act goes on, "and for compensation for towage and salvage services." This envisions rescue of a vessel in distress. But it is not limited to this. For fear it would be construed to be so limited, the Act adds, "including contract salvage." While the Act would appear to have been primarily intended to cover claims for damages as a result of a tort, it goes further and expressly mentions a claim on a contract for salvage, but it mentions no other contract claim.

The House and Senate Committee Reports on the bill show it was primarily intended to take care of claims resulting from a collision. The reports read:

"The chief purpose of this bill is to grant private owners of vessels and of merchandise a right of action when their vessels or goods have been damaged as a result of a collision with any Government-owned vessel * * *. [House Report 913, 68th Cong. 1st sess.; Senate Report 941, 68th Cong. 2d sess.]"

The state of the law when this Act was passed shows it was not intended to cover contract claims. The Congress had already consented to suit on a re-

pair contract, but it could not be sued in tort. It was not necessary to authorize suits on a contract, but was necessary to authorize a suit in tort.

Towage and salvage claims could hardly be considered as claims arising under contract. They are based not so much on contract as they are on the law of the sea, requiring all vessels in the vicinity to go to the aid of a vessel in distress, in which case the law creates a claim against the distressed vessel and its cargo in favor of the vessel which renders the towage or salvage services.

But there are cases where salvage is performed pursuant to contract, and since in many cases it is not, the Congress thought it necessary to specifically mention contract salvage, so it, too, would be covered.

But this is the only contract claim mentioned, and the mention of the one would seem to exclude by implication all others. This is especially to be implied where there was already a forum for the adjudication of contract claims. The Act took away jurisdiction of a suit on a contract for salvage, but this is the only contract mentioned, and, hence, it would seem to follow that jurisdiction of claims . on other contracts remained where it was before the Act was passed.

■ To so hold would certainly promote the ends of justice in this case, because otherwise plaintiff is without a remedy, because barred by the statute of limitations applicable to suits in the admiralty courts. An Act ought not to be construed so as to deprive a person of an existing remedy given him by another statute, unless the intention of Congress to do so is expressed in unequivocal language.

While this seems in reason to be the proper construction of these Acts as applied to the facts of this case, there is a conflict in the decisions. The Court of Appeals for the First Circuit in Eastern S. S. Lines, Inc., v. United States, 187 F. 2d 956, 959, held that the Public Vessels Act did not authorize an action on a charter party, since it did not cover actions on

contract. The claim was for the cost of repairing a vessel upon redelivery to her owner after use by the Government in the transport of troops and military personnel or their dependents. The question was whether or not the vessel had been employed as a merchant vessel within the meaning of the Suits in Admiralty Act. The court said that if she had not been so employed, the courts of admiralty had no jurisdiction because jurisdiction was not conferred on them by the Public Vessels Act of "a contract claim such as that advanced in the case at bar."

On the other hand, the Ninth Circuit in Aliotti v. United States, 221 F.2d 598, 602, held that an action might be brought under the Public Vessels Act for breach of a charter to restore a ship to good condition upon redelivery. The court said at page 602:

"In any event we think it unimportant whether the Sea Star was employed in one capacity or in the other. The Suits in Admiralty Act and the subsequently adopted Public Vessels Act are complementary jurisdictional statutes providing for admiralty suits against the United States. It has been generally recognized that the later statute supplements the first and was designed by Congress to fill an existing gap. As a practical matter it is often difficult and sometimes impossible to determine whether and when a ship being operated by or for the United States is to be relegated to one category or to the other. In the Ninth Circuit the Public Vessels Act has been given broad scope and applied to a variety of situations. See Thomason v. United States, 9 Cir., 184 F.2d 105, 107, involving a suit by seamen to recover overtime wages; United States v. Loyola, 9 Cir., 161 F.2d 126—an action for maintenance and care. In Thomason many authorities are cited indicative of an increasing recognition of the greater breadth and scope of the Public Vessels Act as differing jurisdictional questions have been presented. It

was thought to be 'a rational interpretation to say that in providing a forum for the adjudication of maritime claims uniformity was sought. To hold that seamen's wage claims are not justiciable under the Public Vessels Act would not diminish the liability of the United States for such claims, but would merely transfer the adjudication of all such claims to jurisdiction under the Tucker Act, thereby defeating the policy of uniformity.' "

This case and others in the Ninth Circuit seem to hold that claims of any nature with respect to vessels are to be heard by the courts of admiralty, either under the Suits in Admiralty Act or the Public Vessels Act.

This court, in an opinion written by the author of the instant opinion, said in Sinclair Refining Co. v. United States, 124 F.Supp. 628, 129 Ct.Cl. 474, that an action for breach of a bareboat charter to restore the vessel to good condition upon redelivery might be brought under either the Suits in Admiralty Act or the Public Vessels Act. We said there was no question that a suit might be brought under the Suits in Admiralty Act for the repair of a merchant vessel under a time charter, and that we saw no reason why a suit for the breach of a bareboat charter should not be brought in the same court under either the Public Vessels Act or under the Suits in Admiralty Act. We said, since the admiralty court had jurisdiction of an action on a time charter, it should also have jurisdiction of an action on a bareboat charter.

The Sinclair case had to do with a contract concerning the operation of a vessel, whereas the present case has nothing to do with its operation, but with its construction or repair. Nevertheless, our holding in the Sinclair case is not in accord with the view expressed in the beginning of this opinion, that the Public Vessels Act was intended to cover only tort actions, except those contract actions expressly mentioned. It was a departure induced by the apparent absurdity of a holding that an admiralty court had jurisdiction of an action on a time charter, but did not have of an action on a bareboat charter.

It was also induced by the opinion of the Supreme Court in Calmar Steamship Corp., v. United States, 345 U.S. 446, 73 S.Ct. 733, 97 L.Ed. 1140. In that case the vessel was privately owned and time chartered to the United States and had been devoted wholly to the carriage of munitions. It was contended that jurisdiction did not lie under the Suits in Admiralty Act because the vessel was not employed as a merchant vessel. In determining this question, the Court rejected the cargo test, and held that a privately owned vessel operated for the United States for hire was a merchant vessel, irrespective of her cargo.

In the course of its discussion the Court, 345 U.S. on page 455, 73 S.Ct. on page 738, used this reasoning, which had great influence on us in the Sinclair Refining case:

"* * * The Suits in Admiralty Act and the Public Vessels Act are not to be regarded as discrete enactments treating related situations in isolation. Hence there is no reason why a claim arising in connection with a vessel bareboat chartered by the United States and carrying war material should be heard by a District Court, while a like claim relating to a vessel chartered as was the Portmar and carrying the same type of cargo, should require an action to be filed in the Court of Claims. Nor is there any reason why a collision involving the one vessel should result in an admiralty suit under the Public Vessels Act, while on the same facts, recovery in the case of the other vessel should have to be sought on the law side. We have no authoritative indication that Congress wished such results, and it is quite another thing for us, in the absence of guidance from Congress, to assume that it did."

\* \* \* \* \* \*

Notwithstanding the intimation from the above quotation, the Court expressly

946

disavowed an intention to intimate an opinion that the claim asserted in the suit, to wit, a claim for additional charter hire and for the loss of the vessel, was cognizable under the Public Vessels Act. In a note 345 U.S. on page 456, 73 S.Ct. on page 738, the Court said:

"It is not to be assumed that all claims sounding in contract can form the basis of a suit under the Public Vessels Act. The Act expressly authorizes towage and salvage claims. We intimate no opinion as to other claims, and do not suggest that all or any of the causes of action in this very suit would or would not qualify under the Public Vessels Act. There are cases in which jurisdiction over contract claims other than towage or salvage has been assumed. Thomason v. United States, 9 Cir., 184 F.2d 105; United States v. Loyola, 9 Cir., 161 F.2d 126. But cf. Eastern S. S. Lines v. United States, 1 Cir., 187 F.2d 956. All that matters for our purpose is that there is a class of cases, no matter how narrow, which, if the cargo test of jurisdiction is applied, will be heard by the District Courts in admiralty when a vessel owned by the United States is involved, and in the Court of Claims when the vessel was chartered as was the Portmar. It is not our task, of course, to torture the Suits in Admiralty and Public Vessels Acts into an all-inclusive grant of jurisdiction to the District Courts. But equivocal language should be construed so as to secure the most harmonious results."

The Court's decision was rested on its holding that the vessel was employed as a merchant vessel and, hence, it did not hold that such an action could be brought under the Public Vessels Act.

We are, therefore, without guidance from the Supreme Court as to the extent to which contract claims are covered by the Public Vessels Act. In Canadian Aviator, Ltd., v. United States, 324 U.S. 215, 65 S.Ct. 639, 89 L.Ed. 901 and American Stevedores Inc., v. Porello, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011, the actions sounded in tort.

Our holding in the Sinclair Refining Co. case, supra, may have been justified on the ground that it would have been incongruous to have held otherwise; but we are nevertheless of the opinion that the Public Vessels Act was primarily intended to cover tort actions, and that, except in unusual circumstances, contract actions do not come within its scope, except on those contracts specifically named. In short, we are unwilling to further extend the coverage of the Public Vessels Act beyond the particular facts of the Sinclair case.

Defendant concedes in its brief (page 7) that while the vessels in this case were undergoing repairs, they were not employed as merchant vessels, and that suit could not be brought under a literal interpretation of the Suits in Admiralty Act. The vessels had been tied up at Lee Hall, Virginia, for nearly four years before the repairs were made.

■ We are convinced that it cannot be assumed that Congress, in the passage of the Public Vessels Act, intended to withdraw from a claimant a remedy he clearly had in the Court of Claims to sue for a breach of a construction contract, even though it related to a vessel that had been laid up for four years, and that it did not intend to reduce the time in which he had to assert that claim from six years to two years. Such a purpose is not discernible from the language of the Act, and to stretch its language to make it fit the defendant's Procrustean bed would deprive this contractor of a remedy enjoyed by all other contractors engaged in the performance of a contract to do any other sort of public work. That this work was the repair of such vessels as we are here dealing with, instead of a building, affords no reason to reduce the limitation on the presentation of claims in connection with it from six to two years, and to deny the plaintiff access to the Court of Claims.

Defendant's motion to dismiss for lack of jurisdiction is overruled.

It is so ordered.

JONES, Chief Judge, and MADDEN and LITTLETON, Judges, concur.

LARAMORE, Judge, took no part in the consideration and decision of this case.