Louis A. Pagnucco, J.
This case arises from a verified petition filed in Filiation Term of the Family Court of the State of New York in the City of New York. Petitioner alleges that she is pregnant with child which is likely to be born out of wedlock, offers a certificate of pregnancy, and asks this court to issue a warrant of arrest to require the respondent to show cause why the court should not enter against him a declaration of paternity, an order of support and such other and further relief as may be appropriate under the circumstances. This type of proceeding was formerly brought in the City of New York in the then Court of Special Sessions, under the name of paternity proceedings, pursuant to article V of the former New York City Criminal Court Act, and thus was regarded as criminal in form, although civil in essence (see Matter of Clausi, 296 N. Y. 354, 355, 356 [1947]).
*15 With the establishment of the State-wide Family Court on September 1, 1962, Filiation Term was included in this court as a civil proceeding; thereby, completing “ the evolution of paternity proceedings from ‘ criminal ’ to ‘ civil ’ proceedings ” (Joint Legis. Comm, on Ct. Reorganization, Comment to § 523). This proceeding, as was its predecessor, is in derogation of the common law, which imposed no obligation on a putative father to support his natural child. (See Hough v. Light, 275 App. Div. 299 [1st Dept., 1949]; Commissioner of Public Welfare v. Koehler, 284 N. Y. 260, 266, 267 [1940].)
In support of her application for the warrant of arrest, the petitioner alleges that the respondent is an # * * Ambassador attached to * * * the United Nations, that he is likely to leave the jurisdiction and that a summons would be unavailing. A special appearance has been entered on behalf of the ‘‘ Embassy of the Republic * * * amici curiae, ’ ’ urging that this court lacks jurisdiction because of diplomatic immunity and status.
The Embassy predicates its claim on the ‘ ‘ Headquarters Agreement ” between the United Nations and the United States, as conferring on resident representatives of Member Nations to the United Nations the privileges and immunities of ambassadors accredited to the United States (Public Law, 357, 80th Cong., 1st Sess., ch. 482, 61 U. S. Stat. 756 [1947]); on the United States Constitution (art. III, § 2, subd. 2) giving the Supreme Court original jurisdiction in all cases affecting ambassadors, other public Ministers and Consuls; on the United States Code (tit. 28, § 1251, subd. a, par. [2]) vesting in the Supreme Court original and exclusive jurisdiction of ‘ ‘ All actions or proceedings against ambassadors and other public ministers of foreign states * * * not inconsistent with the law of nations ’ ’; and on section 252 of the United States Code declaring that any Federal or State writ of process ‘ ‘ whereby the person of any ambassador or public minister of any foreign prince or State, authorized and received as such by the President ’ ’ is arrested or imprisoned, or his goods or chattels seized or attached shall be void.
It has been generally maintained that the whole subject of the domestic relations of husband and wife and parent and child belongs to the law and courts of the States. (Popovici v. Agler, 280 U. S. 379 [1930] [a suit for divorce and alimony]; Urdaneta v. Urdaneta, 179 Misc. 95 [Domestic Relations Ct. of N. Y., Family Ct., N. Y. County, 1942] [petition by abandoned wife of Vice-Consul of Venezuela for support]; State v. Flores, 197 *16 Minn. 590 [1936] [a filiation proceeding against a Consul]; Duran-Ballen v. Duran-Ballen, 180 Misc. 750 [Supreme Ct., N. Y. County, 1943] [wife’s action for declaratory judgment against Consul-General of Ecuador to declare a foreign divorce invalid]; and, see, Albanese v. Richter, 161 F. 2d 688, 689 [C. C. A. 3d, 1947]; Hearne v. Smylie, 225 F. Supp. 645, 653 [U. S. Dist. Ct., D. Idaho, S. D., 1964].) (See, as to the case law prior to Popovici [supra]; Higginson v. Higginson, 96 Misc. 457 [Supreme Ct., Kings Spec. Term, 1916].)
In Popovici (supra), the court denied a writ to prohibit a State court from hearing a marital case against a Vice-Consul, notwithstanding apparently broad constitutional and statutory language giving the Supreme Court original jurisdiction and the Federal District Courts exclusive jurisdiction of all suits against Consuls and Vice-Consuls (U. S. Const., art. III, § 2; 1911 Judicial Code, § 256, subd. 18 and § 24, subd. 18 [36 U. S. Stat. 1087]). Mr. Justice Holmes emphasized that the entire field of husband-wife, parent-child relations has been understood to belong to the laws of the States, not of the United States; that Federal jurisdiction over divorces and alimony has always been denied; and that, indeed, it was the common understanding when the Constitution was adopted that the domestic relations of husband and wife, and parent and child, were reserved to the States (280 U. S. 379, 383, 384). Holding, moreover, that the statutory language had to mean ordinary civil proceedings and not what formerly would have belonged to the Ecclesiastical Courts, the court declared that in “ the absence of any prohibition in the Constitution or laws of the United States it is for the State to decide how far it will go ” (ibid, p. 384).
It appears clear, however, that Popovici dealt only with the extent of the exclusive jurisdiction of a suit against a Consul by virtue of Federal statute, and not with any claim of diplomatic immunity. In contradistinction to Ambassadors, Consuls are commercial representatives and, as such, their immunity is limited at the most to their official acts. (Carrera v. Carrera, 174 F. 2d 496 [C. A., D. C., Feb. 28, 1949]; Waltier v. Thomson, 189 F. Supp. 319 [U. S. Dist. Ct., S. D. N. Y., 1960]; Anderson v. Villela, 210 F. Supp. 791 [U. S. Dist. Ct. Mass., 1962].)
As the court pointed out in Carrera v. Carrera, in upholding dismissal of a domestic relations suit against an Ambassador’s butler on the ground of the latter’s diplomatic immunity, the question of diplomatic immunity was not raised in Popovici because “it is universally recognized as a principle of international law that, in the absence of express agreement therefor, *17 immunity does not extend to consuls, who are merely commercial representatives of foreign states, 16 Am. Jur. 964. Cf. The Sao Vincente, 1922, 260 U. S. 151, 155, 43 S. Ct. 15 ”. (Carrera, p. 498; cf. Waltier v. Thomson, supra; and see the limited immunity which the United States in 1945 conferred unilaterally on foreign representatives to international organizations ; in the International Organizations Immunity Act, U. S. Code, tit. 22, §§ 288a-288f, particularly § 288d.)
However, in the case at hand both the attorney for the petitioner and the lawyers for the Embassy of the Republic * * * agree that the respondent is an * =" * Ambassador attached * ° * to the United Nations. The brief on behalf of the Embassy shows that the respondent is designated by the Republic * * ® a member of the United Nations, as its Permanent Representative and Ambassador Extraordinary and Plenipotentiary to the United Nations, and that he holds a card issued by Secretary of State Herter, certifying that he is entitled as the Permanent Representative * * * “ to the privileges and immunities set forth in Public Law 357, 80th Congress ” (1947). [Although not determinative of the application, we note a letter from the United States Mission to the United Nations, appended by counsel for the petitioner, informing him that, pursuant to his request, the matter of certain allegations made by the petitioner were discussed with the respondent Ambassador, and that he categorically denied them.]
Public Law 357 of the 80th Congress (U. S. Code, tit. 22, § 287) is known as the “ Headquarters Agreement”. It was entered into between the United States and the United Nations. Section 15 of article V provides that every person designated by a member of the United Nations as its principal resident representative to the United Nations or as its resident representative with the rank of Ambassador or Minister Plenipotentiary, shall “ be entitled in the territory of the United States to the same privileges and immunities, subject to corresponding conditions and obligations, as it accords to diplomatic envoys accredited to it.” It is clear from the context and purpose of the statute that “it” refers to the United States, and that the respondent Ambassador to the United Nations having been so designated is entitled, by virtue of the Headquarters Agreement, to whatever privileges and immunities are “ accorded to diplomatic envoys accredited to the United States ” (Sen. Report 559, 80th Cong., 1st Sess., p. 4, submitted by Senator Vandenberg, Committee on Foreign Relations, to accompany S. J. Res. 144 and S. J. Res. 136; and see, to same effect, Tsiang *18 v. Tsiang, 194 Misc. 259, 260 [Supreme Ct., Spec. Term, N. Y. County, 1949]), upholding diplomatic immunity in a separation suit against the permanent resident representative of Chinese Government to United Nations (Arcaya v. Paez, 145 F. Supp. 464 [U. S. Dist. Ct., S. D. N. Y., 1956], affd. on opinion below 244 F. 2d 958 [C. A. 2d]), applying diplomatic immunity in a suit for libel against envoy to United Nations, United States of America ex rel. Casanova v. Fitzpatrick (214 F. Supp. 425 [U. S. Dist. Ct., S. D. N. Y., 1936]) in which Judge Weinfeld, dealing with the broad field of immunity in connection with a subordinate member of the Permanent Mission of Cuba to the United Nations held that the petitioner in that case was not a member of the diplomatic staff accredited to, and recognized by the United States Government. However, he set out the need for granting adequate immunity to representatives for the United Nations, stating in part (p. 431) that “From the start it was evident that unless adequate immunity was provided to protect them in the exercise of their respective functions, the independence of the organization would be undermined and its effectiveness greatly hampered, if not destroyed ”. (See, also, Gross, Immunities and Privileges of Delegations to the United Nations, 16 Int. Organizations, pp. 483, 504, n. 46 and 505, n. 51; American Law Inst., Restatement. Foreign Relations Law of the United States, Tentative Draft No. 1, § 80, p. 252, ‘ ‘ Diplomatic Immunity”; ‘ ‘ United States Jurisdiction over Representatives to the United Nations ”, 63 Col. L. Rev., 1066-1085; also, Barnes, “Diplomatic Immunity from Local Jurisdiction, in U. S. Dept. of State, Bull., Aug. 1, 1960, at p. 180, declaring that although a few writers have maintained that diplomatic officers should not be exempt from civil jurisdiction in questions of a private nature, the prevailing interpretation of international law and the one which has been followed in American practice is that complete immunity from civil process should be granted under all circumstances ” [citing 4 Hackworth, Digest of Int. Law, p. 534; 4 Moore, Digest of Int. Law, p. 637].) (To same effect, see Convention of Havana, 1928, 6th Int. Conf. of American States, art. 19. And see, Stuart, American Diplomatic and Consular Practice, 1952, ch. 14, “ Diplomatic Immunities ”, p. 254, citing Hershey, Essentials of Int. Pub. Law and Organization, 1927, p. 406. Also, see, Report of the American delegation to the United Nations Conference on Diplomatic Intercourse and Immunities, Vienna, Austria, March 2 to April 14, 1961 [Dept. of State publication 7289], p. 16, reiterating the rule of immunity from civil and *19 criminal jurisdiction, although suggesting that there should be some limitations not involved in the present case [art. 31, par. 1].)
The scope of diplomatic immunity from local jurisdiction, predicated as it is upon the national and international need to avoid impediments to effective diplomatic intercourse, has been set forth in the ‘ Instructions to Diplomatic Officers of the United States, March 8, 1927,” prescribed by Executive Order (Collection of the Diplomatic and Consular Laws and Regulations of Various Countries, by Feller and Hudson, Carnegie Endowment for International Peace, pp. 1263-1264):
“VII — 1. Immunity from arrest — Process.—A diplomatic representative possesses immunity from the criminal and civil jurisdiction of the country of his sojourn and cannot be sued, arrested, or punished by the law of that country. (R. S. secs. 4063, 4064 [U. S. Code, tit. 22, §§ 252, 253]). Neither can he waive his privilege, except by the consent of his government; for it belongs to his office, not to himself. It is not to be supposed that any representative of this country would intentionally avail himself of this right to evade just obligations.
“VII — 2. Property not exempt from process. — If a diplomatic representative holds, in a foreign country, real or personal property aside from that which pertains to him as a diplomatic representative, it is subject to the local laws.
“VII — 3. Exemption from testifying. — A diplomatic representative cannot be compelled to testify, in the country of his sojourn, before any tribunal whatsoever. This right is regarded as appertaining to his office, not to his person, and is one of which he cannot divest himself except by the consent of his government. Therefore, even if a diplomatic representative of the United States be called upon to give testimony under circumstances which do not concern the business of the mission, and which are of a nature to counsel him to respond in the interest of justice, he should not do so without the consent of the President, obtained through the Secretary of State. ’ ’
Having ascertained that the respondent * * * is the accredited Ambassador and principal representative * * * to the United Nations, this court reaches the conclusion that the motion for a warrant of arrest must be denied. From reading the pertinent cases and statutes, in relation to the law of nations, the court concludes that it has no jurisdiction to entertain paternity proceedings against the respondent while he is serving in his present official capacity, and accordingly the petition is dismissed. This, of course, is without prejudice to *20 any right of the petitioner to renew if and when the respondent is not clothed with diplomatic immunity, and this judgment of the court shall not be construed as limiting or abridging any rights to assert any claim by or on behalf of the yet unborn child in any future proceedings in this or in any other forum.