**Girard E. WEIDNER, Appellant,**

v.

**INTERNATIONAL TELECOMMUNICATIONS SATELLITE ORGANIZATION, Appellee.**

**No. 12328.**

District of Columbia Court of Appeals.

Argued May 11, 1978.

Decided Sept. 21, 1978.

R. Kenneth Mundy, Washington, D. C., for appellant.

William D. Rogers, Washington, D. C., with whom Edward J. Spriggs, Washington, D. C., was on the brief, for appellee.

Before KELLY, KERN and YEAGLEY, Associate Judges.

PER CURIAM:

This appeal stems from the trial court's dismissal of appellant's action for breach of an employment contract. Specifically, the trial court found that appellee was immune from suit by virtue of an Executive Order which predated the filing of the complaint in this case. It is the validity of the Executive Order and the immunity that arose therefrom which are the subjects of this appeal. We affirm.

On March 3, 1977, appellant filed a complaint in Superior Court seeking damages from the International Telecommunications Satellite Organization ("Intelsat"). The complaint averred that appellant was wrongfully dismissed from his job as purchasing officer. Intelsat made a special appearance solely to assert its immunity from suit pursuant to the International Organizations Immunities Act of 1945 ("The Act"), 22 U.S.C. § 288 (Supp. IV 1974). The

trial court heard argument and subsequently granted appellee's motion to dismiss.

Intelsat is an international organization established in 1973 pursuant to an international agreement to which the United States and one hundred other governments are parties. Its purpose is to develop and maintain a global telecommunications satellite system established under previous international agreements.[1]

On January 19, 1977, then President Gerald Ford designated Intelsat as a "public international organizations entitled to enjoy the privileges, exemptions and immunities conferred by the International Organizations Immunities Act." Exec. Order No. 11,966, 42 Fed.Reg. 4331 (1977).

■ Appellant first contends that the International Organizations Immunities Act does not vest the President with authority to bestow immunity. More specifically, he argues that 22 U.S.C. § 288 (1970), authorizes the President to "condition" or "revoke" immunity, but not to grant it.

22 U.S.C. § 288 (Supp. IV 1974), provides:

For the purposes of this title, the term "international organization" means a public international organization in which the United States participates pursuant to any treaty or under the authority of any Act of Congress authorizing such participation or making an appropriation for such participation, *and which shall have been designated by the President through appropriate Executive order as being entitled to enjoy the privileges, exemptions, and immunities provided in said sections. The President shall be authorized, in the light of the functions performed by any such international organization, by appropriate Executive order to withhold or withdraw from any such organization or its officers or employees any of the privileges, exemptions, and immunities provided for in said sections* (including the amendments made by said sections) *or to condition or limit the enjoyment by any such organization or its officers or employees of any such privilege, exemption or immunity.* The President shall be authorized, if in his judgment such action should be justified by reason of the abuse by an international organization or its officers and employees of the privileges, exemptions, and immunities provided in said sections or for any other reason, at any time to revoke the designation of any international organization under this section, whereupon the international organization in question shall cease to be classed as an international organization for the purposes of said sections. [Emphasis supplied.]

We agree with appellant that the President may not "grant" immunity under the statute. However, President Ford did not grant immunity but instead designated Intelsat as an international organization meeting the criteria set forth in the Act. Such designation entitled appellee to those immunities which Congress had determined to extend to all such international organizations so designated. Hence, the Executive Order was not a "grant" of immunity, but a designation which acted to implement the statute. *See* 22 U.S.C. § 288, *supra.* The Executive Order was well within the President's authority, and the designation was not *ultra vires.*

■ Appellant also contends that the Executive Order cannot operate retroactively to immunize Intelsat from a cause of action which arose before the order issued. We disagree. The date upon which the cause of action arose is not material to the question of immunity. The crucial date is that on which the complaint is filed. If a cause of action arises and an individual or organization is subsequently clothed with immunity, courts lack jurisdiction to entertain actions brought against such individuals or organizations so long as the immunity exists.[2] *See Arcaya v. Paez,* 145 F.Supp.

---

1. The United States participates as a party in Intelsat pursuant to the Communications Satellite Act of 1962, 47 U.S.C. § 701 *et seq.* (1970).

2. The record shows that counsel for appellant corresponded with the Department of State in order to ascertain the immunity status of Intel-

464, 472 (S.D.N.Y.1956), *aff'd per curiam,* 244 F.2d 958 (2d Cir. 1957); *Bradford v. Chase Nat. Bank of City of New York,* 24 F.Supp. 28, 36 (S.D.N.Y.1938), *aff'd sub nom. Berger v. Chase Nat. Bank of City of New York,* 105 F.2d 1001 (2d Cir. 1939), *aff'd* 309 U.S. 632, 60 S.Ct. 707, 84 L.Ed. 990 (1940); *Anonymous v. Anonymous,* 44 Misc.2d 14, 252 N.Y.S.2d 913, 919 (1964).[3]

Finally, appellant contends that even if the Executive Order was valid, Intelsat was not immune from this particular action.[4] He posits that there is a distinction between immunities extended to foreign governments and international organizations and argues that international organizations such as Intelsat enjoy a "less protective immunity than foreign governments." Even if Congress intended for there to be such a distinction when they enacted the International Organizations Immunities Act in 1945, it is unclear what the differences in the immunities are. Moreover, the United States District Court for the District of Columbia has, in recent opinions cited by appellant, found international organizations immune from suit on facts which resemble those of the instant case. In *Dupree Associates v. Organization of American States,* No. 76–2335 (D.D.C., Memorandum Orders of June 1, and June 22, 1977), the District Court analogized the immunities of international organizations to those of foreign sovereigns for purposes of a suit on a construction contract. And, in *Broadbent v. Organization of American States,* No. 77–1974 (D.D.C., Memorandum Order of March 28, 1978), the court held that it did not have jurisdiction over a suit brought against the Organization of American States by former employees.

Accordingly, the order of the trial court granting appellee's motion to dismiss is *Affirmed.*

---

sat. On December 19, 1976, the State Department responded that there were ongoing negotiations and that appellee was likely to receive immunity in the future. In light of this information, we are hard pressed to understand why the complaint in this case was not filed until almost three months later, two months after the Executive Order issued.

3. Appellant cites *Continental Casualty Co. v. United States,* 156 F.Supp. 942, 140 Ct.Cl. 500 (1957), to support his position on this issue. As that case applies to the facts of this case, the Superior Court would have been in error if it had given the Executive Order retroactive effect by invoking it as a bar to suits filed before its effective date. However, that is not what happened in the instant case. The Superior Court, here, merely invoked the Executive Order as a bar to a suit filed almost two months after the order was issued by the President.

4. Appellant also contends that the Executive Order is unconstitutional because the President was attempting to amend the "treaty" which established Intelsat without the advice and consent of the Senate. We do not find this argument compelling since it was not a treaty that established Intelsat but an international agreement. The advice and consent of the Senate, therefore, was not required.